L. H. WOODS & CO. v. HALF, WEISS & CO.

1. INTENT—SALE.—The intent of parties, when clearly ascertained, is of controlling force in determining when a sale of chattels has been executed.

2. SALE.—Every sale transfers the property; that is not a sale, which does not transfer the property in the thing sold. The article sold must be susceptible of delivery, and so designated that it can be known from all other things.

3. CUSTOM.—If lawful, a custom may be shown, and which will control and supply an omission in a contract between buyer and seller.

4. SAME.—The custom among merchants at Galveston, in dealing with country merchants, that the seller has not performed his duty or parted with his property until he has boxed up the goods, conveyed, and delivered them to a carrier, and has taken a bill of lading therefor, may be given in evidence in ascertaining when the property in goods sold to a country merchant passed.

5. SAME.—Goods boxed up, marked in the name of the buyer, and on a dray on the way to the wharf for delivery to the carrier, are not subject to levy as the goods of the buyer.

APPEAL from Galveston.. Tried below before the Hon. A. P. McCormick.

This was a trial of the right of property, under the statute, in certain merchandise levied on under an execution in favor of L. H. Woods & Co. against J. R. Brooks, and claimed by Half, Weiss & Co.

The merchandise had been bought by Brooks, at Galveston, of Half, Weiss & Co., on a credit of ninety days, and at the time of seizure by the sheriff were boxed up, marked with Brooks's name and place of residence, and on the dray on the way to the wharf in the city of Galveston for delivery to the Houston Navigation Company, a common carrier, to be transported towards its destination, Columbus, Texas.

It was shown in evidence that, by the custom of trade in Galveston, goods sold to interior merchants were not considered as delivered, and the risk of the ownership of the seller ended, until placed in charge of a carrier for conveyance to the purchaser, and the carrier's receipt or bill of lading taken therefor by the seller.

There was a verdict for claimants, and judgment rendered, from which Woods & Co. appealed.

*Mills & Tevis,* for appellants, cited 1 Pars. on Cont., 6th ed., pp. 519, 526, 595, 597; Cartland *v.* Morrison, 32 Me., 191; Kimbro *v.* Hamilton, 2 Swanst., 190; Hall *v.* Robinson, 2 Comst., 293; Cleaveland *v.* Williams, 29 Tex., 209; 2 Kent, 496; Dutton *v.* Solomonson, 3 Bos. & Pul., 584; Long on Sales, 150; 2 Greenl. Ev., sec. 249; Chandler *v.* Fulton, 10 Tex., 22.

*F. Charles Hume,* for appellees.

IRELAND, ASSOCIATE JUSTICE.—Law writers and courts have given some general rules governing questions like those involved in this case, but a careful examination will show that each case has been controlled by its own attendant circum-

stances. There is, however, one thing that courts have ever sought for, and if found clearly and unmistakably, it has been of controlling force: that is, the intention of the parties.

Some writers make the point at which the seller's duty in the premises ceases, the initial point of a change of property.

In the case of Gerard *v.* Prouty, 34 Barb., 456, which was a sale of cigars at auction, the court say: "At the time of damage the cigars had not been weighed, there being loose ones not counted."

"Both of these acts, as well as delivery, were necessary to pass the title."

Was there a sale of the property to Brooks, or was it a negotiation about a sale?

A sale imports and necessarily carries with it a change of ownership. (Pars. Merc. Law, 46.)

If there be a bargain for the sale of specific goods, and there remains something material to be done by the seller, and a loss occurs, it falls on the seller. (Pars., 47.)

Questions of this kind have given rise to much litigation and caused some perplexity. Whatever rule be adopted, it may be sometimes difficult to apply it, but we cannot doubt that the true principle is this: Every sale transfers the property, and that is not a sale which does not transfer the property in the thing sold; but this property cannot pass, and therefore the thing is not sold unless, first, it is completed and wholly finished, so as to be in fact and in reality the thing purporting to be sold; and in the second place, it must be so distinguished and discriminated from all other things that it is certain, or can be made certain, what is the specific thing the property in which is changed by the sale. If the transaction be deficient in either of these points, it is not a sale, although it may be a valid contract for a future sale of certain articles when they shall be completed, or when separated from others.

A contract for a sale of certain property when something remains to be done, or at the happening of some event, is

not completed when the thing is done or the event happened. The buyer does not then become the owner of the property, and cannot then, by tendering the price, acquire a right to the possession, but he may tender the price, or do whatever else he had to do by the terms of the agreement, and then sue the owner for his breach of contract. But the property in the goods remains in the original owner. Judge Parsons, in his work on Contracts, vol. 1, p. 44, says: "In general, where anything remains to be done by the seller of goods, as between him and the buyer, before delivery, the buyer acquires no complete present right of property." This rule receives its most frequent application in the sale of a specified quantity of goods, to be afterwards separated by weight, measure, or enumeration, and this without reference to the difficulty or facility of separation. So notwithstanding the buyer's promise to pay rent or storage, or the giving of a storage receipt, or an agreement that the seller shall keep the goods for the buyer's use and at his expense.

Let us apply the rules, as stated above, to the facts of this case. Whether Brooks remained and saw each article separated from the bulk of clothing, and boxed up and marked, or whether he merely selected articles of which he was to have a quantity, and ordered so many, like those selected, to be boxed, marked, and sent by the Houston Direct Navigation Company, does not clearly appear. But suppose the former, did the property in the goods then pass to Brooks? It is in proof not questioned or contradicted that Half, Weiss & Co. were to send the goods to the common carrier and get his receipt therefor. Besides this express contract, it is in proof equally clear that it is a custom of trade in the city of Galveston, when a country dealer buys a bill of goods, for the seller to box and deliver to a common carrier for shipment to the buyer, and until that is done, and the carrier's bill of lading taken for them, the seller has not performed his duty or parted with the property in the goods.

This custom would control and supply an omission in a

contract between buyer and seller, such a custom not being in violation of any law. (1 Pars. on Cont., 293, 294.)

Suppose the goods in question, being hauled to the wharf by appellees' dray, had never reached the wharf, and neither drayman or goods had ever been heard of again, what would have been the relative rights of the parties to the contract? Brooks would not, in that event, be considered or held to to the owner of the goods, and the loss undoubtedly would have fallen on appellees. But in the event supposed, would Brooks not have some remedy for a non-delivery and failure on the part of appellees to comply with their contract? Certainly he would. If clothing advanced next day one hundred per cent. in the Galveston and Columbus markets, Half, Weiss & Co. would have been liable to Brooks for the amount of his damage. (Duncan *v.* McMahan, 18 Tex., 597.)

We therefore conclude that the dominion and control over the property by Half, Weiss & Co. had not ceased when it was levied upon, and that the right to, and in, this property had not vested in Brooks at the time of the levy.

If the drayman had reached the wharf, delivered the goods to the common carrier to whom Brooks had ordered them delivered, and the drayman had got his receipt therefor, the right of property would undoubtedly then have been in Brooks, and any seizure or loss thereafter would have been a matter for adjustment between the common carrier, or attaching creditor, and Brooks. The charge of the court was in conformity to the views here expressed. There was a fair trial, and we see no error in the judgment, and it is affirmed.

AFFIRMED.