STUART et al. v. CALAHAN.

(Court of Civil Appeals of Texas. Amarillo. Nov. 18, 1911. Rehearing Denied Dec. 16, 1911.) [1]

1. CONTRACTS (§ 346*)—PLEADING AND PROOF.

Plaintiff cannot recover upon a contract different from that declared on.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1718–1753; Dec. Dig. § 346.*]

2. ASSIGNMENTS (§ 135*) — ACTION BY ASSIGNEE—EVIDENCE.

In an action by an assignee of an account for a percentage of the premiums on certain insurance policies written by the assignor, alleged to be due under an oral contract between the assignor and the defendant, an insurance agent, testimony by the assignor that defendant told him that if he would procure $100,000 of business by Christmas he would give him a free trip to California, but that, before the time for the trip came, he resigned his position and knocked him out of the trip, was irrelevant.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 232; Dec. Dig. § 135.*]

3. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—EVIDENCE IRRELEVANT TO ISSUE.

The admission of evidence in an action on an account not relevant to the issue was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4154; Dec. Dig. § 1050.*]

4. EVIDENCE (§ 471*)—MATTERS OF FORM OR OPINION.

In an action by an assignee of an account for a percentage of the first premiums on certain policies written by the assignor, a witness for the plaintiff, in answer to a question as to whether he would have taken the policy if it had not been for what the assignor did, answered that he did not think he would have because the assignor had got his mind on it and he had been thinking about it. Held, that the answer was a statement of a fact, and not of a conclusion or opinion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2169; Dec. Dig. § 471.*]

5. WITNESSES (§ 275*)—EXAMINATION—QUESTION TO PARTY.

In an action by the assignee of an account, it was reversible error to permit counsel for plaintiff to ask defendant whether he was not a pretty good suer, whether he had brought a good many suits, whether he had sued the maker of a note, who was one of the parties named in the account assigned, after it was paid, and to ask, "Now, at the time you filed these suits, you did not have the notes in your possession, did you?" since the questions were manifestly improper and prejudicial.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 967–975; Dec. Dig. § 275.*]

6. ASSIGNMENTS (§ 138*)—SPECIAL ISSUES—CONFORMITY TO ISSUES RAISED BY PLEADING.

In an action by the assignee of an account for a percentage of the first premiums due the assignor on insurance policies issued to certain persons named, under a verbal contract between

---

[1] Filed in the Court of Civil Appeals at Ft. Worth Feb. 3, 1911, and transferred to this court July 1, 1911, by order of the Supreme Court.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

the assignor and the defendant, issues as to whether the defendant at a certain time and place promised to pay the assignor such percentage and as to whether the defendant at a certain time and place promised to pay the assignor such percentage in order to assist him in closing up and securing applications for certain policies while defendant was at that place, were not in conformity with the issues made by the pleadings.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 235–238; Dec. Dig. § 138.*]

**7. TRIAL (§ 352*)—SPECIAL ISSUES—UNDUE PROMINENCE TO THEORY OF ONE OF THE PARTIES.**

The submission of special issues which give undue prominence and emphasis to the plaintiff's contention and theory of the case is error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 844, 845; Dec. Dig. § 352.*]

**8. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERROR—PROPOSITIONS AND STATEMENT.**

An assignment of error not followed by a proposition and statement sufficient to clearly define the ground upon which the assignment is predicated will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

Appeal from Haskell County Court; Joe Irby, Judge.

Action by G. W. Calahan against R. T. Stuart and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

King & Isaacs, Scott & Key, H. A. Turner, and D. B. Trammell, Jr., for appellants. H. G. McConnell and Gordon B. McGuire, for appellee.

HALL, J. This suit was filed in the county court of Haskell county, by appellee, G. W. Calahan, claiming as assignee of an account in favor of W. R. Miller, against appellant Stuart. The amended original petition shows that the debt evidenced by the account was for 75 per cent. of the first premiums due upon certain policies of insurance, issued to parties named therein, due the said Miller under a verbal contract entered into between himself and the said Stuart on or about the 14th day of September, 1908. The plaintiff alleged the contract to be that the said Stuart would pay the said Miller "75 per cent. of the first premiums on all policies of insurance of the kinds hereinafter mentioned as being written that he, the said Miller, should sell and cause persons to take at and around Rochester, Texas." Plaintiff further alleges that in pursuance of said contract the said Miller sold and caused to be taken and written at and around Rochester, Tex., about the 15th day of October, 1908, and prior to October 27, 1908, "the policies of insurance named in his account." To this pleading, on the part of plaintiff, the defendant answered generally, and specially the execution of a written contract, dated October 27, 1908, containing many provisions not necessary to be noticed here. The cause was submitted to a jury upon special issues, to be herein-

after mentioned. The trial resulted in a verdict in favor of the plaintiff, in the sum of $661.50. This amount it appears from the pleadings of the plaintiff, is $83.01, in excess of the amount shown to be due by the allegations in the petition.

Upon suggestion of fundamental error, on the part of appellant, our attention is called to the evidence of Miller, in part as follows: "I did have some business dealings with R. T. Stuart along in the fall of 1908. He called me up and solicited my services over the phone, and I told him I could not do anything for him. He made me an offer and some inducements, and he wanted me to quit the Kansas City Life and go with the Pacific Mutual. I told him I would consider it, and he called me up next day over the phone, and offered me considerable inducements to take up the work for him for the Pacific Mutual Life, and I did take it up. As to whether I went to work for the Pacific Mutual by reason of the talk I had with Stuart over the phone, will say that he wanted to make some loans out here, and for that reason partly there were some parties out here that wanted to take up a loan with him, and for that reason I took up business with him, and I told him the next day that if he would send the applications out here that I would fill out the blanks and make an application for a loan, and with that understanding I was to do some business for him in the insurance business. As to what I mean by doing some insurance business, will say that I was to take and solicit applications for insurance policies. There was also something said about what I was to receive. I think the verbal contract was in September, as well as I remember, although I do not remember exactly. The contract I had with Stuart about pay was: He told me that he would give me 75 per cent. commission on all business written. By that I mean that I was to receive 75 per cent. of the first premiums on all insurance written. Acting under that I did attempt to do some insurance business for Mr. Stuart. After that time I met Stuart. He had agreed to make a loan, and he came out to inspect the loan. I told Stuart that I could write $10,000 insurance for Mr. Gay and Mr. Woodson if he [Stuart] would make a loan of $8,000 on the land up here. Mr. Stuart then came out to inspect the loan, and I met him here with Mr. Gay. We got a surrey, and I, Mr. Gay, and Mr. Stuart went out to make an inspection of the loan, and right here is the first time that I ever met Mr. Stuart personally. I would guess that was some two or three weeks after the conversation over the phone that I have detailed. I do not know exactly that length of time, but I do know that the applications had been taken by me, and I had sent them in, too, and the company had issued the policies and returned them. On the oc-

casion when I first met Mr. Stuart here at Haskell, there was a contract agreed to between us—that of some insurance business for him. Stuart asked me if I had any prospects out here on this trip, and says: 'I will help you close them up, and will give you 75 per cent. commissions.' I did sign this paper that you now show me, and will say that it represents the premiums of life insurance policies written or rather produced by me and written by the Pacific Mutual Life Insurance Company. That was my business— business that I produced and caused to be written. (The business referred to is set out in the account and its written assignment, and contains the names of G. C. Carruthers, A. B. Carruthers, W. B. Lee, W. H. Dunn, W. T. Motes, and Robert Motes as the parties insured.) Yes, sir; this was business written under the contract that I had with Stuart when I saw him here at Haskell, and on which he agreed to pay me 75 per cent. commission. As to how that 75 per cent. commission was to be paid will say that Stuart told me that he would advance me $300 if I would turn over notes on this business to him—the notes on the business we wrote up here—and that he would pay me $25 a week, etc. The land that he inspected did not belong to any of the parties that we wrote policies for that day. The conversation with reference to insurance started on our way over to Rochester. When it was first mentioned, Stuart told me that he would give me 75 per cent. on all the business written. We wrote about $20,500 worth of insurance there at Rochester that day. The policies that this suit is based on here are those that were written in and around Rochester, Tex. Mr. Stuart agreed to go out there with me and assist me in closing them. He told me he would give me 75 per cent. of the commission if I would get all the prospects out there, and he told me he would help me close them. I told Stuart I had a number out there who talked with me and who had promised to take insurance with me."

[1] From this testimony we think the plaintiff below did not recover upon the contract made in September by phone and declared upon in his petition. His testimony shows that some two weeks later a new contract was made with Stuart, and that "this was business written under the contract that I had with Stuart when I saw him here at Haskell." The rule is well established that a party cannot recover upon a different contract than the one declared upon. Gammage v. Alexander, 14 Tex. 418; Cooper v. Loughlin, 75 Tex. 527, 13 S. W. 37; Lewis v. Hatton, 86 Tex. 536, 26 S. W. 50; Morris v. Kaseing, 79 Tex. 145, 15 S. W. 226, 11 L. R. A. 398; Letot v. Edens, 49 S. W. 110. This and the excess in the verdict being fundamental errors will require a reversal of the case.

[2, 3] In the first assignment appellants complain of the court's action in admitting in evidence the testimony of Miller as follows: "Furthermore he [meaning Stuart] told me that, if I would procure $100,000 of business by Christmas, he would give me a free trip to California, but, before the time for the trip came, he resigned his position and knocked me out of my trip to California." This testimony has no bearing upon the issue to be tried, and, while we can see no special prejudice that could have resulted by reason of its admission it should not be permitted upon another trial.

[4] The second assignment is based upon the admission of the following testimony from the witness Carruthers, tendered by plaintiff: "Q. Would you have taken the policy of insurance if it had not been for what Miller did?" The answer of the witness: "I do not think I would, for the simple fact that he (Miller) had got my mind sort of on it, and I had been thinking about it some." The objection urged is that it called for a conclusion and an opinion of the witness. We cannot agree with this contention. The testimony was pertinent to the issue to be tried, and the answer of the witness was the statement of a fact.

[5] Over the objection of the defendant, appellee's counsel was permitted to ask defendant these questions: "You are a pretty good suer, are you not Mr. Stuart? You bring a good many suits? Now isn't it a fact that you sued A. P. Carruthers on this note that was given here after it was paid? You also sued G. C. Carruthers after his note had been paid did you not? Now at the time you filed these suits you didn't have the notes in your possession, did you?" They were objected to because they were calculated to prejudice the minds of the jury against the defendant and were immaterial and irrelevant. These objections should have been sustained as the questions were manifestly improper. It is the duty of the trial court to keep counsel within the record in examination of witnesses.

[6] The case was submitted to the jury upon four special issues only. The first being, Did W. R. Miller and R. T. Stuart make and enter into a verbal contract prior to October 27, 1908, in which said R. T. Stuart agreed and promised to pay said W. R. Miller 75 per cent. of the first premiums on all policies of insurance which the said Miller should cause persons to take in the Pacific Mutual Life Insurance Company of California, at and around Rochester, Tex. (2) Did R. T. Stuart at Haskell, Tex., or Rochester, Tex., or between Haskell and Rochester, promise before the 27th of October, 1908, to pay W. R. Miller 75 per cent. of the first premiums upon such policies as are mentioned in the first special issue above, by paying him $300 in cash, and paying the balance at $25 per week? (3) Did R. T. Stuart at Haskell, Tex., or between Haskell and Rochester, or at Rochester, Tex., before the 27th of Oc-

tober, 1908, promise to pay W. R. Miller 75 per cent. of the first premiums upon such policies as are mentioned above in order to assist said W. R. Miller in closing up and securing the applications therefor while he (R. T. Stuart) was in Rochester, Tex.? The second and third special issues submit to the jury's consideration issues that are not made by the pleadings in the case, and the first special issues evidently referred to the contract declared upon in the petition as having been made over the phone in September.

[7] The issues, as submitted, gave undue prominence to the contention of plaintiff that the policies of insurance upon which the suit is based, were written under a verbal contract, and unnecessarily and improperly emphasize appellee's contention and theory of the case. This was prejudicial error, and appellants' third. proposition based thereon is sustained.

The fifth assignment of error is too general and will not be considered.

[8] The sixth assignment of error is indefinite, and is not followed by a proposition and statement sufficient to clearly define the point upon which the assignment is predicated.

Because of the errors hereinbefore specified, the judgment is reversed and the cause remanded.