## ATLAS TORPEDO CO. v. UNITED STATES TORPEDO CO. (No. 3192.)

Court of Civil Appeals of Texas. Amarillo. March 6, 1929.

Rehearing Denied March 27, 1929.

Fischer & Fischer, of Wichita Falls, for appellant.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellee.

HALL, C. J. The Atlas Torpedo Company sued the United States Torpedo Company to recover $6,000, which the plaintiff alleges is due under a contract for the sale of certain nitroglycerine, dynamite, acid, two frame houses and furniture therein, and other articles mentioned in the contract of sale. The written contract introduced provides that the consideration of $6,000 is to be paid as follows: The assumption by the United States Torpedo Company of a debt which the Atlas Torpedo Company owes the Atlas Powder Company, in the sum of $4,996.61, and the further assumption of a debt which the Atlas Torpedo Company owes the Humble Pipe Line Company in the sum of $857.15, and the payment in cash of $146.24 to the Atlas Torpedo Company, being the difference between the total of the debts assumed and the consideration of $6,000. The contract provides that the debt to the Atlas Powder Company is to be paid $1,000 in cash, $142.85 on July 15, 1927, $1,000 on August 15, 1927, $1,000 on September 15, 1927, $1,000 on October 15, 1927, and the balance of $853.76 to be paid on November 15, 1927; that the amount due the Humble Pipe Line Company of $857.15 is to be paid on July 15, 1927. The contract is dated "the ——— day of July, A. D., 1927." This contract is signed "Atlas Torpedo Company by Frank Howe, President, and Sole Owner of all Stock, Party of the First Part." The only other signature to the instrument is "United States Torpedo Company by ———, Asst. Secy. & Treas., Party of the Second Part."

The petition alleges that on or about June 30, 1927, the plaintiff sold and delivered to the defendant the explosives and personal property specifically described in the contract and in the petition, and alleges that the defendant agreed to assume and pay plaintiff's debts to the Atlas Powder Company and the Humble Pipe Line Company in the sums and upon the dates hereinabove set out; that the defendant has failed and refused to pay any of said debts as it agreed to do, and has become liable to plaintiff for the entire purchase price of said property, to wit: $6,000, to plaintiff's damage in said sum. The prayer is for the debt, interest, and costs of suit.

The United States Torpedo Company answered by general demurrer, several special exceptions, and a general denial, and specially denied that plaintiff had sold it the merchandise described in the petition; that the Atlas Company, through its president, H. F. Howe, negotiated with the defendant for the sale of said merchandise at a price of $6,000, but that plaintiff's proposition to sell at that price was never accepted by the defendant, and no final contract was ever concluded between the parties for the sale and purchase of said property; that during the negotiations the defendant had ascertained that there were numerous and sundry claims of various kinds and character being asserted against plaintiff by third parties, and defendant advised plaintiff that it would not accept the proposition of sale, which was entirely contingent upon the matter being closed, to the satisfaction of defendant's attorney, Ben W. Tipton; that the plaintiff never satisfied Tipton with reference to the outstanding claims against plaintiff which involved to some extent the property being offered for sale, and defendant so notified plaintiff and refused to execute the proposed sales contract tendered by plaintiff; that during said negotiations, defendant received from plaintiff a small amount of personal property as an accommodation to plaintiff, agreeing to hold it at plaintiff's risk, pending the negotiations relative to the sale of said property; and, when said trade was not closed, defendant advised plaintiff that such was held at plaintiff's risk and would be returned at any time on demand, and defendant here and now offers to return the same as it has heretofore done, since no final trade was ever closed for the purchase of said property; that, in fact, a large part of said property which plaintiff offered to sell, has since been sold by plain-

tiff and has been allowed to deteriorate and is now of little or no value.

Plaintiff filed a supplemental petition, giving the names of the defendant's officers through whom the defendant conducted the negotiations, alleging that they had authority to contract for the defendant and to bind it in said transaction.

The issues were submitted to a jury and the findings are, in substance, as follows: (1) That on or about June 30, 1927, the defendant, United States Torpedo Company, acting through its officers and agents, entered into an agreement with the plaintiff, Atlas Torpedo Company, for the purchase of the property under the terms and as described in plaintiff's first amended original petition; (2) that the defendant, as a part of such agreement, notified the plaintiff that such matter could only be closed upon satisfying defendant's attorney, B. W. Tipton, as to the legal phases of such matter; (3) that the plaintiff never satisfied said attorney as to such legal phases of the matter.

Based upon this verdict, the court instructed judgment for the defendant.

Appellant presents the case here upon two propositions, as follows:

First. The court should not submit to the jury questions that are not ultimate issues of fact as made by the pleadings and supported by the evidence, and, if questions are submitted to the jury upon evidential matters which are included and embraced in an ultimate question of fact that is submitted to the jury, the answers of the jury to such evidential matters should be disregarded and only the answers of the jury to the ultimate questions of fact should be considered by the court in rendering judgment upon the jury's verdict.

Second. Where the jury finds, in response to a direct question and an instruction governing its answers thereto, that the plaintiff and defendant entered into the agreement upon which the plaintiff sues, it is error for the court to render judgment for the defendant upon the answers of the jury to their questions, which he construes to mean that the jury found that the plaintiff and the defendant did not enter into said agreement, for by so doing the court renders the answers of the jury irreconcilable, and, in which event, a mistrial should be ordered.

These propositions do not complain of any specific error committed by the court. They do not point out any action by the court which is specified as an error, As stated by Judge Speer in Barnes Bros. v. I. & G. N. Ry. Co. (Tex. Com. App.) 1 S.W.(2d) 273, they are mere abstractions. As abstract propositions of law, it may be admitted that they are correct, but the function of a proposition in briefing is to state the reasons why a specific ruling is erroneous. Benavides v. Garcia (Tex. Civ. App.) 283 S. W. 611. Applying this rule strictly, appellant's propositions would not be entitled to consideration, but, in deference to the earnestness with which appellant's counsel urges error in this court, we will review the record in the light of the briefs.

The jury found that the parties entered into an agreement in accordance with the terms thereof, as set out in the plaintiff's pleading. The defendant's pleading sets out as a further term and condition of the agreement that the sale should not be consummated and the matter closed until the defendant's attorney was satisfied upon the legal phases of the matter. These findings must be construed together, and, when so considered, the result is that the plaintiff did not set out all the terms of the agreement, and that the real contract was as stated by plaintiff, supplemented by the defendant's allegations. The plaintiff denied that the contract was subject to the approval of Tipton. It is elemental that the plaintiff must recover upon the contract alleged or not at all. Morris v. Kasling, 79 Tex. 141, 15 S. W. 226, 11 L. R. A. 398; McConnell v. Payne & Winfrey (Tex. Civ. App.) 229 S. W. 355; Stuart v. Calahan (Tex. Civ. App.) 142 S. W. 60; D. H. Adams & Co. v. T. P. Coal & Oil Co. (Tex. Civ. App.) 275 S. W. 1100. Since the answer of the jury to the second issue shows that plaintiff did not state the contract really made between the parties, we could affirm the judgment under the rule held in the cases just cited.

It appears from the record that the contract was executory and the sale could not be consummated until the defendant's attorney was satisfied with reference to the legal questions which might arise, and the record discloses that the bulk sales law and the amount of outstanding indebtedness against the Atlas Torpedo Company were matters which he was to decide. The jury found that the contract was made subject to his approval and that he had not approved it. Such stipulations in contracts are valid and are upheld by the courts. When a contract is made subject to the approval or disapproval of either of the parties or a third party, it is the good faith of the party who is to be satisfied and not the reasonableness of his dissatisfaction which constitutes the test of the right. The good faith of Tipton is not questioned, either by the pleadings or the evidence, and the record discloses that he was not even unreasonable in the matter of his dissatisfaction. Sanger v. Slayden, 7 Tex. Civ. App. 605, 26 S. W. 847; Davis v. Tate (Tex. Civ. App.) 242 S. W. 761; Smith v. Lander (Tex. Civ. App.) 106 S. W. 703.

The defendant introduced in evidence a copy of what purports to set out the terms of the contract of sale, which, like the other copy introduced by the plaintiff, is signed only by the Atlas Torpedo Company. In the

copy introduced by the defendant there is a stipulation that as part of the consideration, the defendant is to pay certain indebtedness to the Atlas Powder Company of a sum less than the amount provided in the undated contract. The copy of the contract introduced by the defendant is dated July 7, 1927. Numerous letters and telegrams were introduced. Taking them chonologically, the first is a telegram dated at Electra, July 6th, signed by the United States Torpedo Company, addressed to the Humble Pipe Line Company, stating that the sender is contemplating the purchase of explosive materials from the Atlas Torpedo Company represented to be $857.15, and inquiring whether if a trade is consummated, and the United States Torpedo Company assumes the debt, it would be satisfactory to pay July 15th. The record does not show any reply to this telegram by the Humble Company. On the same day the United States Torpedo Company wired the Atlas Powder Company to the same effect, stating the amount of the indebtedness at $4,887.52, and inquiring whether it would agree to accept payment from the United States Torpedo Company $1,000 on the 15th days of August, September, and October, respectively. On the 7th of July the Atlas Powder Company wired the United States Torpedo Company that the balance due on the account as stated in the telegram was correct and terms of payment were satisfactory, provided the first check was received immediately. Later, and on the same date, the Atlas Powder Company wired the United States Torpedo Company that the account against the Atlas Torpedo Company had been increased $109.09 by invoice just received, which covered the shipment of June 28th, adding: "Advise if you accept this additional charge." This telegram does not seem to have been answered by the appellee, and on July 12th, the Atlas Powder Company again wired the United States Torpedo Company: "No reply our wire Seventh Atlas Torpedo Company account Advise."

On July 7th, defendant's attorney Tipton wrote the county clerk at Wichita Falls, inquiring whether the lien records disclosed any mortgage or deed of trust executed by the Atlas Torpedo Company, covering any of its property in Wichita county, and on July 8th, the clerk replied by letter, stating that she did not find any deeds of trust, but found a chattel mortgage given by the Atlas Torpedo Company to the Dixon Motor Company, dated April 26, 1927, due in four months, to secure an indebtedness of $200, secured by a Dodge coupé. On July 12th, the United States Torpedo Company wired the Atlas Powder Company: "Deal with Atlas Torpedo Company not consummated. Not sure it will be."

On July 15th, Howe, the president of the appellant company, wrote the Atlas Powder Company, in which he stated that on June 25th he had sold out to the United States Torpedo Company for $6,000, the latter to assume and pay the debts, and stating that the cause of the delay in closing the deal was a suit by Mendenhall and Ford Alexander growing out of the purchase of the Mendenhall Torpedo Company in 1925, and that the case will be appealed and won by Alexander. This letter states that the trade has been made and the property delivered, and, unless payment is made, suit will be instituted to recover from the United States Torpedo Company.

On July 18th, Howe wrote the United States Torpedo Company that the property which the latter had bought was situated in a certain building and was subject to the addressee's disposition, and that the owner of the building, where the property was situated, was anxious to demolish the building, and the property should be removed. The United States Torpedo Company replied to this letter on July 20th, stating, in part: "You are aware of the fact that the proposed sale by you to us of certain explosive material about which we have had numerous conferences, has not been consummated and we have never accepted the bill of sale covering this property. You will remember when the writer last talked to you about this proposed sale, that he advised you that other claims were being made against the material mentioned, which would have to be cleared up before we would be willing to consummate the trade. These claims have not been cleared and we are not willing to consummate any trade with you until these matters are satisfactorily cleared up. This is to therefore advise you that we have purchased no property from you and will not do so until the claims against the same which you and the writer have discussed are cleared up and, even then, only in the event that we are convinced that we are getting good title to the property which you have proposed to sell to us."

On July 23d, Mr. E. E. Fischer, then representing Mendenhall, wrote the United States Torpedo Company that one Chaffe had obtained a judgment against Mendenhall for over $3,500; that a writ of garnishment had been sued out against the Ford Alexander Corporation, in which Mendenhall had intervened and was seeking to establish a debt in the sum of $5,000 and interest to stop the garnishment of Chaffe; that a verdict had been rendered against the Ford Alexander Corporation in favor of Mendenhall for $5,000.00 for a debt secured by Ford Alexander stock. The letter further states that the writer is informed that Ford Alexander Corporation is the real owner of a great part of the Atlas Torpedo Company, and, if that fact is established, then any judgment obtained by Mendenhall or Chaffe would go against the interest of the Ford Alexander Corpora-

tion to the extent of his interest therein, and the letter proceeds: "Before you make payment to the Atlas Torpedo Company or .Ford Alexander Corporation, you should see that the above claim is out of the way, as we have information that said Atlas Torpedo Company is, in fact, owned by the Ford Alexander Corporation."

On July 26th, Howe the president of the Atlas Torpedo Company, wired the Atlas Powder Company, as follows: "Destructive litigation by V. B. Peck has prevented payment of sale price of Atlas Torpedo Company by U. S. Torpedo Company, who have taken possession of the assets but have not paid the money. You should file suit against Atlas Torpedo Company, Mendenhall Torpedo Company and the United States Torpedo Company, asking judgment against the first two for the amount of your account and against the last for preferential claim against the assets to satisfy the judgment. Give us the names of your attorneys at Wichita Falls and instruct them to sue as above. E. D. Brewer, representing Alexander, will confer with them and give necessary information and utmost cooperation to get your money. Immediate action is necessary before assets can be impounded in an attachment suit now begun by Peck. Answer immediately."

On the same day Howe wrote the Atlas Powder Company, in which he states "Beside the law suit as mentioned in my letter of July 15th, by Mendenhall, another suit was filed last Wednesday by the former manager of the Atlas Torpedo Company, V. B. Peck, for a receiver to be appointed, also claiming that he, Peck, was a one-third owner of the Atlas Torpedo Company. Hell only knows what other things may be trumped up down there but there are the two accounts only, as known that the company is owing—yours and the Humble Pipe Line Company, and the United States Torpedo Company have accepted $6,000.00, their own valuation, of chattels, so attorney Brewer's idea is to enter suit at once through your lawyers or do it himself at your instructions and to secure all that particular material for no other purposes than to pay you and the Humble account."

On July 30, 1927, the attorney for V. B. Peck wrote B. W. Tipton, the attorney for defendant, that Peck then had a suit pending in the Eighty-Ninth district court of Wichita county, claiming one-third interest in the assets of the Atlas Torpedo Company, and that F. F. Howe, the present president of the Atlas Torpedo Company, was unlawfully trying to dispose of the assets of said company and denying the authority of Howe to dispose of the property owned by the Atlas Torpedo Company.

This documentary evidence clearly shows that the refusal of Tipton to approve the sale was not arbitrary and unreasonable. Howe is the man who had assumed the right to make the sale. His power and authority to do so was expressly challenged.

■■■ The issue of delivery is not before us by any assignment. The appellant contends not only that the sale was made, but that the property was delivered. The evidence of the appellee is to the effect that they accepted the keys to the magazines and houses for the purpose of ascertaining whether the goods and merchandise, which they contemplated purchasing, was actually on hand; that they never exercised any acts of ownership or control with reference to the property. Whether there has been a sale and by the terms of the sale the title to the property has passed is purely a question of intent, and the minds of the parties must meet, or, in other words, acceptance must be identical with the terms of the proposal before the sale is complete. The evidence supports the second finding of the jury, to the effect that the deal could not be closed until appellee's attorney was satisfied as to the legal phases of the matter, and the evidence further supports the finding that this condition had not been complied with. The satisfaction of Tipton was under these findings and the evidence sustaining them, a condition precedent to the formation of the contract, and until Tipton was satisfied, the contract of sale was executory. The appellant did not request that the issue of delivery and the intent of the parties in relation thereto be submitted to the jury. Delivery of personal property does not necessarily prove a sale, and is only a collateral matter which may or may not tend to show the intent. Having failed to request the submission of such issue, the appellant waived the failure of the court to do so, and we must presume in support of the judgment that the delivery, if any, of the property by appellant to appellee was for the purpose only of enabling appellee to ascertain whether the goods were on hand.

A consideration of the record as a whole convinces us that a proper judgment has been rendered, and it is therefore affirmed.

### On Motion for Rehearing.

■■■ The appellant's motion is based upon the mistaken theory that the evidence in the case shows an executed contract of sale. The record does not sustain this position. At most, it was an agreement to sell, based upon several conditions. Defendant's attorney, as found by the jury, must be satisfied as to the legal phases of the matter and the creditors of appellant, some of whose debts the defendant was to assume as part of the consideration, had to be dealt with, and terms of payment of other claims must be agreed upon. The question of when a sale of chattels is completed and when title passes to the purchaser is, in its final analysis, one of intention to be gathered from the facts and circumstances of each particular case.

Woods v. Half, 44 Tex. 633; Shearman v. Poe (Tex. Civ. App.) 9 S.W.(2d) 762; Dawson v. Malone (Tex. Civ. App.) 283 S. W. 634. The jury's finding, which is supported by sufficient evidence, that the agreement to sell should not be closed until defendant's attorney was satisfied, was a condition precedent to a completed sale. The record shows that there were outstanding debts, claims, and suits in which the property was involved, and the agreement to sell and purchase was made subject to the settlement of some of these, and, as to others, the consent of creditors had to be obtained before the sale could be closed. The defendant denied that there had been any delivery for the purpose of effecting a sale and with the mutual intention of passing title to the property. This issue was not submitted to the jury.

In the light of these facts, it cannot be reasonably contended that the sale was executed, even if it is admitted that it was executory. It is not contended that the conditions had been complied with, and therefore the case has been properly disposed of.

The motion for rehearing is overruled.