**LEONARD et al. v. YOUNG, District
Judge, et al.**

No. 14670.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 16, 1945.

Rehearing Denied March 16, 1945.

Thompson, Walker, Smith & Shannon
and Hugh B. Smith, all of Fort Worth, for
relators.

W. M. Short and Callaway, Wade & Davis, all of Fort Worth, for respondent
Ralph R. Carroll.

McDONALD, Chief Justice.

This is an original mandamus action in
this court to compel the Honorable Bruce
Young, Judge of the 48th District Court,

of Tarrant County, to render judgment in favor of relators on the verdict of the jury in a cause pending in that court wherein relators are plaintiffs and respondent Carroll is defendant.

Relators sued Carroll in the court below, alleging that the relator Wooldridge owned a certain tract of land, the title to which was clouded by reason of certain claims being asserted by the respondent Carroll. Relators sought judgment removing the cloud from the title to said land.

Carroll, by way of cross-action, alleged that he and the relator Leonard had by verbal agreement entered into a partnership for the purchase, development and sale of said land; and that under the terms of their partnership agreement Leonard was to advance the money to purchase the land and to make certain improvements on it, Carroll was to devote his time and efforts to develop and sell the land, and he and Leonard were to divide the profits equally after Leonard had been repaid the amount of his advancements. Carroll further alleged that, subsequent to the formation of such partnership, Leonard purchased the land, taking the title in his own name in order to secure himself for the moneys he advanced; that later Leonard excluded Carroll from the partnership and sold the land to Wooldridge for a large profit; and that Carroll became entitled to half of such profit. In the alternative Carroll alleged that the sale to Wooldridge was simulated, and was made for the purpose of depriving Carroll of his share of the profits in the enterprise; that Leonard in fact continued to be the real owner as between himself and Wooldridge; that subsequent development and sales of such land resulted in large profits; and that Carroll became entitled to half of such profits. Carroll alleged that if it should be held that their agreement did not make him and Leonard partners, that, to quote from his pleadings, "then and in that event it constituted the embarking by them in a joint enterprise for profit, in the nature of a partnership, the legal attributes, results and consequences of which, as between the parties thereto were and are the same as if said agreement had made and constituted them true partners in every respect." Carroll prayed for $75,000 actual and $10,000 exemplary damages, and for general relief.

Other issues, including a receivership of the property, were involved in the suit, but are not material to the questions presented in the mandamus action now before us.

Relators denied the formation of the partnership, and alleged, among other things, that prior to the purchase of the land by Leonard, Carroll sought to induce Leonard to purchase the land and finance its development and sale, and bear all losses, and divide the profits with Carroll, but that Leonard rejected such proposals; and further alleged that it was at all times agreed and understood by the parties that in no event should the proposition proposed by Carroll become operative until and unless Carroll should sell the land.

Twenty-six special issues were submitted to the jury. The jury answered thirteen of them. Some of them were not required to be answered because they were conditioned upon answer made to other issues. The jury failed to agree upon answers to the other unanswered issues.

The first issue inquired whether Leonard and Carroll verbally agreed to become partners in the purchase, development and sale of the real estate in question. The jury returned a negative answer. The second and fifth issues became immaterial in view of the negative answer to the first issue.

In answer to the third issue the jury found that it was understood by and between Leonard and Carroll that the real estate in question should be deeded to Leonard to protect and secure him in getting back the purchase price paid therefor and such other expenses as he should pay, and interest thereon.

In answer to the fourth issue the jury found that Carroll, at all times after the purchase of the land by Leonard, diligently devoted himself, his time, energy and ability to attempting to develop and sell said real estate.

The jury answered affirmatively the following issue:

"Question Six: Do you find from a preponderance of the evidence that prior to the time Leonard purchased the real estate in question that he and Carroll agreed that said real estate should be sold and that said Leonard should be repaid the purchase price of said land, together with any moneys he may have advanced and any expense he may have incurred in the sale of

said land, together with four per cent interest from the date of the purchase of said land and that after such amounts should be repaid to said Leonard, that the profits derived from the development and sale of said land should be equally divided between said Leonard and said Carroll, and that said Carroll should devote his time, efforts and ability to have said land developed and to sell same?"

In answer to the seventh issue the jury found that Carroll exerted all his efforts and ability to procure the development of said real estate and to sell same up to the time said real estate was sold by Leonard.

The jury failed to answer the following issues:

"Question Eight: Do you find from a preponderance of the evidence that said Carroll was given a reasonable length of time to have said real estate developed?

"Question Nine: Do you find from a preponderance of the evidence that at the time said Leonard sold said land, he, in good faith believed that said Carroll had been given a reasonable time in which to develop said land?

"Question Ten: Do you find from a preponderance of the evidence that at the time said Leonard sold said land, he, in good faith believed that said Carroll would not be able to develop said real estate?

"Question Eleven: Do you find from a preponderance of the evidence that at the time said Leonard sold said land, he, in good faith, believed that said Carroll would not be able to effect a sale of said land at a profit?

"Question Twelve: If you have answered the preceding question, yes, and only in that event, then answer: Do you find from a preponderance of the evidence that such belief upon the part of said Leonard, that said Carroll would not, at any time, be able to sell said land at a profit, was caused by the acts of said Carroll, in failing to develop or effect a sale of said real estate up to that time?

"Question Thirteen: Do you find from a preponderance of the evidence that it reasonably appeared to said Leonard that said Carroll would not be able to develop or sell said land within a reasonable time?

"Question Fourteen: Do you find from a preponderance of the evidence that said Leonard executed a conveyance of the land in question to Wooldridge with the intent to deprive said Carroll of any profits

that might accrue to him in the future through the development and sale of said real estate?

"Question Fifteen: Do you find from a preponderance of the evidence that at the time said Leonard conveyed the land in question, there existed good cause for the termination, by Leonard, of his agreement with Carroll in regard to its development and sale?

"Question Sixteen: Do you find from a preponderance of the evidence that the conveyance of the land in question, by Leonard to Wooldridge, was not made in good faith? Your answer to this question No. 16 will be, either (a) The sale was not made in good faith. Or (b) The sale was made in good faith.

"By the term 'good faith' as used in the above question, is meant that said land was sold for the sole consideration of one hundred thousand dollars and that no agreement or understanding existed between Leonard and Wooldridge that Leonard should receive any additional consideration for same and that Leonard parted with all right of title and possession of said land and intended, by such conveyance to vest full and complete title in said Wooldridge, subject only to the vendor's lien which he retained in such sale."

The jury returned an affirmative answer to the following issue:

"Question Eighteen: Do you find from a preponderance of the evidence that at the time Leonard conveyed the land in question to Wooldridge that Carroll was, in good faith, attempting to effect the development and sale of said land and to comply with all the terms of whatever agreement, if any, you may have found he entered into with said Leonard?"

The jury also returned affirmative answers to the following issues:

"Question Nineteen: Do you find from a preponderance of the evidence that it was understood between Leonard and Carroll that any proposed agreement or arrangement between them, whereby Carroll should be entitled to one-half of the profits should become effective only in the event Carroll found a purchaser to whom Leonard should sell the land?"

"Question Twenty-three: Do you find from a preponderance of the evidence that it was understood between Leonard and Carroll that the time for deciding upon the character of, and adopting some organiza-

83

tion or agreement between them was not to arrive until the lots in the proposed addition should be disposed of or sold by Carroll?"

The jury failed to answer the following issue:

"Question Twenty-five: Do you find from a preponderance of the evidence that there occurred a failure of consideration for the agreement, if any, between Leonard and Carroll, by reason of the failure on the part of Carroll, if he did fail to do the things which he was to do according to the terms of such agreement, if any?

"The term 'failure of consideration' means that sufficient consideration was contemplated by the parties at the time a contract was entered into, but either on account of some innate defect in the thing to be given or done, or non-performance, in whole or in part, of that which the person seeking to enforce the agreement agreed to do, nothing of value can be or is received by the other party."

We consider that the other issues, to-wit, the seventeenth, twentieth, twenty-first, twenty-second, twenty-fourth, and twenty-sixth, are not material to the questions presented in the present mandamus action.

The trial court accepted the verdict and discharged the jury. Relators moved for a judgment on the verdict. The trial court overruled such motion, and declared a mistrial, because he was of opinion, to quote from his order overruling the motion for judgment and declaring a mistrial, "that because of conflict in the answers of the jury, and failure of the jury to answer some of the special issues, which the Court deems to be material neither party is entitled to a judgment upon said verdict."

■ Mandamus will issue to compel the entry of judgment on the verdict if the issues are answered in such way as to require entry of a judgment for one of the parties, but not where, because of conflicting answers, the trial judge was justified in refusing to enter judgment. 28 Tex.Jur. 578.

The contention of relators is that the affirmative answer of the jury to the nineteenth issue, regardless of how the jury answered the issues which were answered, or might have answered the issues which were not answered, required that judgment be rendered in favor of relators, both on their suit and on Carroll's cross-action.

Carroll first contends that there is an irreconcilable conflict in the answers to the sixth and the nineteenth issues; and next contends that if there is no conflict in such answers, then no judgment should have been rendered on the answer to the nineteenth issue because of the failure of the jury to answer other issues.

We have concluded that there is no irreconcilable conflict in the answers to the sixth and the nineteenth issues. The facts found in answer to the sixth issue are (1) that an agreement was made prior to the purchase of the land by Leonard, whereby (2) the real estate should be sold, (3) Leonard should be repaid the moneys he should advance for purchase price and expenses he should incur, with interest, (4) after repayment of such sums to Leonard, he and Carroll should divide the profits equally, and (5) Carroll should devote his time, efforts and ability to have the land developed and to sell the land. In answer to the nineteenth issue it was found that Carroll and Leonard understood and agreed that any proposed agreement or arrangement between them, whereby Carroll should be entitled to half the profits, should become effective only in the event Carroll found a purchaser to whom Leonard should sell. If the sixth issue and the answer to it stood alone, Carroll's right to share in the profits would be the same whether he or someone else found the purchaser. But under the answer to the nineteenth he could recover only if he sold the land. It is admitted that he did not do so. Carroll argues, therefore, that there is an irreconcilable conflict in the answers to the two issues.

■ Relators first argue that under the answer to the nineteenth issue it must follow that the agreement found in answer to the sixth issue never came into existence as an effective and existing contract. They cite cases where the parties agreed that their contract should never become effective or binding until some specified condition was performed or occurred, as, for instance, a condition that the contract should first receive the approval of the party's attorney. They especially rely on such cases as Reinert v. Lawson, Tex.Civ.App., 113 S.W.2d 293; and Atlas Torpedo Co. v. U. S. Torpedo Co., Tex.Civ.App., 15 S.W.2d 150. We do not agree with the contention. As we see it, the answer to the nineteenth issue was not to the effect that the agreement found in answer to the sixth issue

should never come into existence as a contract until and unless Carroll should sell the land, but rather that Carroll should never become entitled to half the profits under such agreement until and unless he should sell the land. We consider the condition not one precedent to the existence of the contract, but a condition precedent to Carroll's right to a share of the profits provided for in the contract. We think that the contract, under the findings of the jury, became a valid and existing contract when the parties entered into it, but that Carroll's right to a share of the profits never ripened because of the condition in the contract inquired about in the nineteenth issue.

■ Relators next contend that there is no conflict, such as will destroy the verdict, and with this contention we agree.

"It will never be presumed that jurors intended to return conflicting answers, but the presumption is always to the contrary. Courts properly refuse to strike down answers on the ground of conflict, if there is any reasonable basis upon which they may be reconciled." Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97, 99.

"Findings as to ultimate facts will control those on merely evidentiary issues, and specific findings will control general ones." 41 Tex.Jur. 1225.

For instance, findings as to specific acts of negligence will control over general findings as to negligence. 41 Tex.Jur. 1225.

■ Relators pleaded that it was understood and agreed that Carroll should not be entitled to any share of the profits unless he should find the purchaser. Carroll pleaded that he and Leonard were partners, and that he was entitled to half the profits if the land was sold. The jury found, as we have said, in answer to the sixth issue that Carroll and Leonard made an agreement that the land should be sold and that Carroll should have half the profits, but specifically found in answer to the nineteenth issue that the parties agreed that any agreement or arrangement whereby Carroll should be entitled to half the profits should be effective only in the event Carroll should find a purchaser to whom Leonard should sell the land. The jury also found that they did not agree to become partners. The jury found generally that there was an agreement to sell the land and divide the profits, but found specifically that it was agreed that Carroll should be entitled to the profits only in the event he should find the purchaser. We hold that the answers to the two issues in question are not in such conflict as to destroy each other.

■ Carroll next contends that the answer to the nineteenth issue does not entitle relators to judgment, in view of the failure of the jury to answer some of the other issues. Again we must examine the issues in the light of the case made by the pleadings of the parties. We must assume, in this character of proceeding, that the evidence justified the submission of all the issues found in the court's charge. Townsend v. Young, District Judge, Tex.Civ. App., 114 S.W.2d 296.

Carroll argues that the agreement found in answer to the sixth issue created a joint adventure between Leonard and Carroll, and that as a result Leonard was obligated to give Carroll a reasonable time to perform his part of the undertaking, even if Carroll's part included the finding of a purchaser for the land. Having held that there is no conflict between the answers to the sixth and the nineteenth issues, we must also take into consideration the condition of their agreement, inquired about in the latter issue, in deciding whether the parties, under the jury findings, entered into a joint adventure.

■ The jury found that there was no agreement for a partnership, but the specific findings as to what the parties did agree, rather than the label given to their agreement either by the jury or by the parties themselves, would control the legal consequences of their acts and would determine their respective rights and liabilities.

Carroll pleaded that they became partners, or, if it should be held that they did not become partners, that they embarked upon a joint enterprise in the nature of a partnership which had all the attributes and consequences of a partnership. He did not plead, in the alternative, that he was employed to sell the land for a compensation of half the profits, and that Leonard agreed expressly or impliedly to give him a reasonable time to sell the land, and that Leonard failed to give him a reasonable time to sell the land. His pleadings were cast entirely upon the theory that he and Leonard became either partners or joint adventurers, and that he became entitled to half the profits resulting from sale

of the land. He pleaded that Leonard excluded him from the partnership. His prayer was for half the profits, or for an accounting of the partnership business. His complaint was not that Leonard prevented him from selling the land and thus earning his share of the profits. His complaint was that Leonard had sold the land and had not paid him his share of the profits. He did not in the alternative sue for the value of his services.

■ As is recognized by many authorities, it is often difficult to determine whether the parties have made a partnership or joint adventure agreement, or a mere employment contract. Under the facts found by the jury, there was no agreement by Carroll to contribute anything other than his labor and skill to the enterprise, nor was there any agreement on his part to share the losses, if any should occur. He was not to share in the profits unless he found the purchaser. And here we have another difficulty. There was no allegation that Leonard agreed to sell at any particular price, nor was there any jury finding to such effect. The most that can be made out of the verdict is that Leonard agreed to share the profits with Carroll if he should convey to a purchaser found by Carroll. Even if Carroll found a purchaser, Leonard was not bound to sell at any given price. Carroll did not plead nor did the jury find that Carroll had anything in the nature of an exclusive listing of the property. In a supplemental pleading Carroll specially denied that his cross-action was one for the recovery of any character of commission for the sale or purchase of real estate as was alleged in the plaintiffs' pleadings. We cannot find the elements of a joint adventure in the agreement found by the jury. See Strawn Nat. Bank v. Marchbanks, Tex.Civ.App., 74 S.W.2d 447, writ refused, and the exhaustive annotation in 137 A.L.R. 6.

As we view the verdict, in the light of the pleadings of the parties, the jury found in answer to the nineteenth issue the main ground of defense alleged by the relators, to-wit, that it was understood between Leonard and Carroll that any arrangement by which he should share in the profits was conditioned upon Carroll finding a purchaser to whom Leonard should sell the land. Carroll did not alternatively plead that he was not given a reasonable time to perform under the agreement pleaded by relators and found by the jury, but only pleaded,

in effect, that he was entitled to recover by reason of the fact that the land had been sold for a profit. Even if all the unanswered issues had been answered favorably to Carroll, the relators would still have been entitled to judgment.

The mandamus will issue.