James VOURAS, Appellant,

v.

3525 TURTLE CREEK, INC., Appellee.

No. 16176.

Court of Civil Appeals of Texas.

Dallas.

June 14, 1963.

Rehearing Denied July 19, 1963.

James L. Mitchell, Dallas, for appellant.

Stark & Davey, Gainesville, for appellee.

DIXON, Chief Justice.

This is an appeal from a judgment for $1,500 in favor of appellee 3525 Turtle Creek, Inc. against James Vouras, appellant.

Appellee alleges that Vouras agreed to pay one-half of the cost of remodeling certain leased premises. The evidence shows that the actual costs amounted to $11,559.60. However a jury found that the reasonable and necessary costs amounted to only $3,-000.

Appellant Vouras contends that no judgment should have been rendered against him. Appellee, 3525 Turtle Creek, Inc. in a cross-assignment of error contends that it should have had judgment for $5,779.80.

For a proper understanding of the controversy we believe it well at the outset to identify the parties.

3525 Turtle Creek, Inc. was a corporation which formerly owned a large luxury apartment building known as 3525 Turtle Creek Boulevard, located in the City of Dallas, Texas.

James Vouras and wife Betty Vouras and Raymond J. LaCombe, as lessees, and 3525 Turtle Creek, Inc. as lessor, in 1957 entered into a written lease agreement covering part of the first floor of the apartment building.

Turtle Room, Inc. was a corporation formed by James Vouras, Betty Vouras and Raymond LaCombe, who assigned their lease contract to the corporation. The assignment was made with the consent of the original lessor, 3525 Turtle Creek, Inc. subject to certain terms and conditions set out in the original written agreement. The new corporation used part of its leased premises in the operation of a restaurant known as the Turtle Room.

Club 3525, Inc. was a non-profit corporation without capital stock. It was organized for the purpose of operating a private club. A portion of the premises originally leased by James Vouras, Betty Vouras and Raymond LaCombe to Turtle Room, Inc. was rented on a month to month basis to Club 3525, Inc. by Turtle Room, Inc.

The only entrance and exit into and out of the private club was by way of the hallway leading through the main lobby of the apartment building. Shortly after the club began operation the owner of the apartment, 3525 Turtle Creek, Inc., began receiving complaints from its tenants about

the patrons of the club using the lobby. It was charged that persons in a drunken condition congregated in the lobby often causing noisy disturbances lasting through most of the night.

It was decided that the only solution to the problem was to provide a new entrance-way into the club from the outside of the building so that the lobby need not be used by the club's patrons. 3525 Turtle Creek, Inc. claims Vouras agreed to pay one-half of the cost of this change. Vouras denies that he made any such agreement.

Following the refusal of Vouras to pay his alleged portion of the costs suit was instituted by 3525 Turtle Creek, Inc. against James Vouras, Betty Vouras, Club 3525, Inc. and Turtle Room, Inc. Recovery was sought against James Vouras and Betty Vouras; and in the alternative against Club 3525, Inc. and Turtle Room, Inc. if it should be found that James Vouras and Betty Vouras were acting as agents of the two corporations.

Judgment was rendered against James Vouras and in favor of the other defendants.

In his first and second points on appeal Vouras attacks the right of 3525 Turtle Creek, Inc. to sue as plaintiffs, and says that necessary parties were not before the court. He points out that some time after the remodeling was finished 3525 Turtle Creek, Inc. sold all or nearly all of its assets, including its claim against Vouras, to a corporation known as Traco Dallas, Inc. Then 3525 Turtle Creek, Inc. was voluntarily dissolved as a corporation. Following this dissolution Traco Dallas, Inc. assigned the claim against Vouras back to 3525 Turtle Creek, Inc. It is the position of Vouras that since 3525 Turtle Creek, Inc. had been dissolved and had disposed of its claim against Vouras, it could not take the claim back, then sue as plaintiff.

We are unable to agree with appellant. Old Art. 1388 V.A.C.S. expressly provides that the officers and directors of a dissolved corporation in the settlement of its affairs may maintain judicial proceedings in the name of the corporation. Art. 7.12 of the Business Corporation Act, V.A.T.S., which supersedes Old Art. 1388, makes similar provisions if suit is instituted within three years after dissolution. In the case now before us the original assignment of the Vouras claim by 3525 Turtle Creek, Inc. to Traco Dallas, Inc. provided that the claim would be reassigned to 3525 Turtle Creek, Inc. if Traco Dallas, Inc. failed to collect the claim within 90 days. The assignment and reassignment were obviously a part of the transactions carried on in settling the affairs of the dissolved corporation. Appellant's first and second points are overruled.

The substance of appellant's third point is that the verdict of the jury was in hopeless and irreconcilable conflict as to a material fact and will not support a judgment against Vouras. The basis for this point is to be found in the answers of the jury to Special Issues Nos. 2 and 4. We quote the two issues and the jury's answers:

"SPECIAL ISSUE NO. 2.

"Do you find from a preponderance of the evidence that James Vouras, at the time and on the occasion in question, was an agent of Club 3525, Inc.?

"In connection with this issue, you are instructed that by the term 'agent' is meant one who undertakes to transact some business or to manage some affair for another by the authority and on account of the latter, and to render an account of it. Answer YES or NO.

"Answer: NO.

"SPECIAL ISSUE NO. 4.

"Do you find from a preponderance of the evidence that the Defendant, James Vouras, in entering into the agreement in question, if any you have found, acted without authority from Club 3525, Inc? Answer YES or NO.

"Answer: NO."

Appellant says that under the jury's answer to Special Issue No. 2 Vouras was not acting as an agent of Club 3525, Inc., but under the jury's answer to Special Issue No. 4 he was an agent of Club 3525, Inc.

Though the jury's answers to the two issues may at first glance seem to be in conflict we are convinced after a careful study of the whole record that they are not. In arriving at this conclusion we have been guided by certain well established principles. The entire charge and all of the verdict must be considered. Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985 (modified in another particular in Bradford v. Arhelger, 161 Tex. 427, 340 S.W.2d 772). Specific findings will control general findings. Ft. Worth & Denver Ry. Co. v. Britton, Tex. Civ.App., 310 S.W.2d 654; Benson v. Missouri K. & T. R. Co., Tex.Civ.App., 200 S.W.2d 233; Leonard v. Young, Tex.Civ. App., 186 S.W.2d 81; Sproles v. Rosen, 126 Tex. 51, 84 S.W.2d 1001. Conflicts which may be apparent rather than real may be disregarded. Texas Employers Ins. Ass'n v. McDowell, Tex.Civ.App., 278 S.W.2d 444; Amis Propane, Inc. v. Graves, Tex. Civ.App., 305 S.W.2d 300; Gregory v. City of Garland, Tex.Civ.App., 333 S.W.2d 869; Poynor v. Groves, Tex.Civ.App., 88 S.W.2d 657. It is the duty of the court to reconcile apparent conflicts in any findings if reasonably possible. Indemnity Ins. Co. of North America v. Craik, 162 Tex. 260, 346 S.W.2d 830; see also 41–B Tex.Jur. 794, 812.

In the instant case the jury specifically found that (1) Vouras agreed to pay one-half of the costs of the remodeling; (2) at the time he was not an agent of Club 3525, Inc.; and (3) at the time of making the agreement Vouras was not acting in the course of his employment with Club 3525, Inc. Against these specific findings is the strange, general, vague and negative finding (4) Vouras in entering into the agreement did not act without authority from Club 3525, Inc.

It may be that Vouras did have authority from the Club to remodel its entrance at his own expense, or partly at his expense. After all the remodeling itself could not be done without the authority of the Club, even if Vouras was willing to pay half of the expense and the Club was not expected to bear any of the expense. Viewed in that light the answers to Issues Nos. 2 and 4 are not really in conflict. Appellant's third point is overruled.

In his fourth point appellant asserts that it was error to render judgment against him because the suit was predicated on an oral promise to pay the debt of another contrary to Sec. 2, of Art. 3995, Vernon's Ann. Civ.St. In support of this view Vouras seeks to show that the debt, if there was one, was the debt of Club 3525, Inc., not a primary debt of his.

We do not agree with appellant. The jury found that (1) Vouras agreed to pay one-half of the remodeling costs, and (2) at the time he was not an agent of Club 3525, Inc. There was ample evidence to support these findings.

There is testimony that Vouras was shown the plans for the remodeling and thereafter he said "Well, we will go 50–50" and "We will go half and half." In the light of other statements and surrounding circumstances the jury was justified in interpreting the above statement as a direct promise of payment by Vouras.

Numerous letters were sent to Vouras demanding payment. He did not at that time deny the debt or deny receiving the letters. He testified that he didn't read the letters. There is testimony that on one occasion when he was asked to pay he said, "Oh, don't worry, I will give you your money; don't worry; you know me."

The original lease contract on which Vouras is named as one of the lessees contains provisions for assignment, with lessor's consent, of the lease to corporate assignee. But the lease also provides that in the event such an assignment is made

"* * * the parties Lessee herein shall agree to continue to remain jointly and severally liable for performance of compliance with all of Lessees' obligations, agreements and liabilities hereunder * * * and shall continue in active charge and management of said restaurant and *Lessees' private club* and all operations thereunder." (emphasis ours)

These and other facts and circumstances negative appellant's contention that the debt in question was not a primary debt of Vouras himself. Appellant's fourth point is overruled.

In his fifth, sixth, seventh and tenth points appellant says that the evidence is insufficient to support (5) the jury's answer to Special Issue No. 1 (in which it was found that Vouras agreed to pay one-half the cost of the remodeling), (6) a finding of the consideration for the agreement, and (10) the judgment entered. The seventh point is to the effect that there was no evidence to support a finding of consideration.

In connection with the fifth and sixth points appellant contends that the court should have granted his motion for instructed verdict and for judgment. This is equivalent to saying that there was *no evidence* to support a judgment for appellee. See Article in 38 Tex.Law Rev. 361 entitled " 'No Evidence' and 'Insufficient Evidence' " by Chief Justice Robert W. Calvert.

■ None of the four points should be sustained. We considered certain aspects of the evidence in connection with our discussion of appellant's second point. There was sufficient evidence to show a consideration for the agreement by Vouras. Under the original lease agreement the lessees, of whom Vouras was one, were required to own at least 50% of stock in any corporate assignee. This applied to both Turtle Room, Inc., the restaurant, and Club 3525, Inc., the private club. Vouras was vitally interested in both these corporations and the profits they might earn. He stood to lose a great deal if his lease

were cancelled because of breach of covenants or law violations. This is shown by his concern when faced with the necessity of removing the cause for the complaints made by the building owner and its tenants. There is testimony by an officer of 3525 Turtle Creek, Inc. as follows:

"Q Now, then between Christmas of 1958 and the time that this remodeling took place, I will ask you, did Mr. Vouras himself make any remarks to you about what he was going to do?

* * * * * *

"A Yes, sir.

"Q What did he tell you he was going to do?

"A During our several discussions he said * * * 'Well, I am going to cure this; I will knock a hole through the back of that and make our own entrance, and it won't bother you'."

We further quote from the record testimony:

"Q Now, did you ever call upon Mr. Vouras to correct that situation?

"A Yes, several occasions, sir.

"Q What would he do when you asked him to correct it?

"A Well, he normally would say, 'I can't run a club and run other folks' business; I will do the best I can'."

Appellant's fifth, sixth, seventh and tenth points are overruled.

■ In his eighth point appellant claims that the judgment has no support in the pleadings. Appellee pled that James Vouras and Betty Vouras individually entered into the oral contract and that they individually agreed to pay appellee one-half the costs of the remodeling. The eighth point is overruled.

In his ninth point appellant argues that the jury verdict will not support the judgment because it was not established that (1) Vouras intended to be personally bound; (2) appellee relied on the personal credit of Vouras; and (3) there was a con-

sideration for the agreement. These contentions are covered by our discussions of other points presented by appellant. The ninth point is overruled.

In its cross-assignment of error appellee urges us to reverse the judgment in its favor for $1,500 and to render judgment in its favor for $5,779.80. Appellee's position is that Vouras agreed to pay one-half of the actual costs, not merely one-half of the necessary and reasonable costs.

We must overrule appellee's cross-assignment. There is evidence that James Vouras and Betty Vouras chose very expensive materials because they "wanted the best." But appellee itself undertook to show by the testimony of its architect that the material and labor that went into the remodeling were necessary and reasonable. There is also evidence that some of the costs were charged as general maintenance expenses, not as remodeling expenses.

The judgment of the trial court is affirmed.