### REPUBLIC BUILDING & LOAN ASS'N
#### v. SIMPSON et al.
#### No. 3100.

Court of Civil Appeals of Texas. El Paso. Jan. 3, 1935.

Rehearing Denied Jan. 17, 1935.

Muse & Muse, of Dallas, for appellant.

J. W. Madden, Jr., of Dallas, for Massey.

Earl E. Miller, of Dallas, for interpleaded defendants.

PELPHREY, Chief Justice.

The statement of the nature, and result of the suit appearing in appellant's brief reads:

This was a garnishment after judgment instituted by the Republic Building & Loan Association against Cecil L. Simpson, garnishee, to reach certain stock, the property of C. L. Frazier, in satisfaction of a judgment obtained by the Republic Building & Loan Association against C. L. Frazier in cause No. 93431–A/B, in the district court of the Forty-fourth judicial district of Texas at Dallas, for $5,246.14.

The garnishee answered and made a full disclosure and interpleaded C. A. Weber, John Massey, Jr., W. S. White, James A. Morton, W. A. Boone, L. H. Chorn, Wm. M. Engle, R. L. Brown, and C. L. Frazier, each of whom filed an answer.

Cecil L. Simpson, the garnishee, alleged that C. L. Frazier brought to his office certificates of stock in the Republic Building & Loan Association issued in the names of John Massey, Jr., W. S. White, James A. Morton, W. A. Boone, L. H. Chorn, Wm. M. Engle and R. L. Brown, each certificate being indorsed in blank, and that C. L. Frazier entered into a written contract to sell said certificates to C. A. Weber, who desired to tender said stock to the Republic Building & Loan Association in a certain lawsuit C. A. Weber had against it as an offset of his outstanding loan with that association; that at the conclusion of the lawsuit, which went against C. A. Weber, Weber instructed the garnishee to hold said stock until C. L. Frazier had paid C. A. Weber $90. And the garnishee likewise in his pleadings asserted a possessory attorney's lien in the sum of $62.50 for legal services rendered C. L. Frazier in some unrelated matter, but this contention was subsequently abandoned by trial amendment.

John Massey, Jr., answered and alleged that he was the owner of certificate No. 647–A in the Republic Building & Loan Association and continuously owned the same for a period of more than three years preceding the filing of his answer, and that any claim or character of right asserted by any other person thereto was inferior to his ownership, and that the same was acquired with actual and constructive notice.

James A. Morton filed two original answers by two respective attorneys, alleging in one that the defendant C. L. Frazier represented to him that he had an opportunity to sell certificate of stock No. 43–A and that the intervener intrusted the same to C. L. Frazier, but that it did not belong to said C. L. Frazier.

W. S. White, W. A. Boone, L. H. Chorn, William M. Engle, and James A. Morton filed a joint answer, and alleged that they each owned in their own right the respective certificates of stock in the Republic Building & Loan Association set out in the garnishee's answer, and that C. L. Frazier did not own or have any interest in the stock of said defendants. They denied that same was pledged, and alleged that, if same had been pledged, that it was without their authority or consent.

R. L. Brown alleged in his answer that he intrusted his certificate of stock in the Republic Building & Loan Association to C. L. Frazier, who agreed with him that he had a sale for the face value thereof.

C. A. Weber pleaded a purchase of all of the certificates of stock involved from C. L. Frazier under the terms of a written contract, and that he had agreed to return the stock to Frazier upon the repayment to him of the partial payments of $90 previously made, and thereafter by trial amendment alleged an equitable lien on the stock and estoppel against all of the interpleaded defendants asserting title to the various certificates of stock.

C. L. Frazier filed a general demurrer and general denial and a disclaimer of any title in said stock.

Plaintiff in garnishment filed its first supplemental petition pleading estoppels against each of the interpleaded defendants and interveners owning stock by reason of their indorsement of the stock in blank and delivery thereof to C. L. Frazier and in permitting him to deal with the same as his own, and thereafter to repudiate the validity of sucn assignments and transfers and the delivery of said certificates.

The cause was tried to the court without a jury, who found the title to the various certificates of stock to be in John Massey, Jr., W. S. White, James A. Morton, W. A. Boone, L. H. Chorn, Wm. M. Engle, and R. L. Brown, but charged all of the stock with a lien in the sum of $90 in favor of C. A. Weber, discharged the garnishee, and allowed his attorney a fee of $75, and taxed the costs against the plaintiff in garnishment.

The Republic Building & Loan Association duly and seasonably reserved its exceptions to said judgment, gave notice of appeal, and filed its supersedeas bond perfecting its appeal to this honorable court for review of the cause.

### Opinion.

Appellant's three assignments of error question the correctness of the trial court's holding that the title to the stock certificates of John Massey, Jr., R. L. Brown, W. S. White, W. A. Boone, L. H. Chorn, Wm. M. Engle, and James A. Morton, did not pass to C. L. Frazier by the indorsement in blank and delivery; in holding that such stock certificates were not the personal property of Frazier; and in not sustaining its plea of estoppel.

The first two propositions involve the question as to whether the facts under which the stock was delivered to Frazier constituted an absolute sale, a conditional sale, or a bailment.

Frazier testified that he had told Massey that he was indebted to appellant; that his attorney had advised him to get hold of stock in the association and use it to pay off his indebtedness; that no man could know the outcome of a lawsuit; that he did not have the money to pay him for it at that time and would not need the stock unless he could use it as a credit on his indebtedness to appellant; that, if he (Massey) would let him have the stock and he was able to use it, he would refinance his home, borrow the money from some other source, and pay him for the stock a hundred cents on the dollar; that, when he turned it over, he wanted him to indorse it in pencil so he could rub out the indorsement if he failed to use it and brought it back; that, if the appellant made any prorations, they would be mailed to Massey and were to be credited against the value of the stock and he (Frazier) would pay the difference; and that he would not notify appellant or make any effort to transfer the stock until it was determined whether or not the court would force appellant to accept it. He further testified that he told each of the stockholders from whom he got stock, except Morton, that he would pay a hundred cents on the dollar for it, if he was able to use it; that his agreement as to the return of the stock or paying for it was the same with all; that he gave each of them, except Morton, a note for the face value of the stock; and that each one of them executed the following agreement: "I hereby agree that if the said C. L. Frazier is not successful in using my stock certificate No. ——— in paying off his loan I will accept same in full satisfaction of the promissory note for $——— executed by him on ——— payable to me."

Massey and Mrs. White both testified as to the agreement under which the stock was delivered to Frazier, and there is no substantial difference between their version and his, except that Mrs. White says he did not give them a note and Massey testifies that Frazier told him to indorse the stock with pencil and that, if appellant could be made to accept it, he would bring it back and get his indorsement with ink.

In passing upon the question as to whether transactions amount to sales, there is one thing the courts have ever sought for, and, if found clearly and unmistakably, it has been of controlling force: that is, the intention of the parties. Woods v. Half, Weiss & Co., 44 Tex. 633. And as further said in that case: "Every sale transfers the property, and that is not a sale which does not transfer the property in the thing sold. * * *"

If we apply these doctrines to the facts before us, this transaction cannot be termed a sale. In the first place, the facts, we think, fail to evidence any intention that the title to the stock certificates should pass at the time of their delivery; and, secondly, the title not passing, there could be no sale.

If title to the shares of stock did not pass to Frazier at the time of their delivery, then

they would not be subject to garnishment as his property in the hands of others.

The question as to whether the transaction here detailed was an absolute sale or some other character of contract was, to say the least, a question of fact, and, the trial court having in effect found that it was not a sale, the judgment should not be disturbed.

■ We find no error in the trial court's action in overruling appellant's plea of estoppel. Appellant's position does not appear to have been changed by the action of the owners in permitting Frazier to deal with the stock, and therefore there can be no estoppel in its favor.

The judgment will be affirmed.