Simon **GOMEZ**, et al., Appellants,

v.

Carlos **FRANCO**, et al., Appellees.

No. 13–83–355–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1984.

Ruben R. Pena, King & Odum, Mission, for appellants.

R.A. Vidaurri, Flores, Sanchez, Vidaurri, Munoz & Guerra, McAllen, for appellees.

Before NYE, C.J., and BISSETT and KENNEDY, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a judgment in which the jury found that appellee Carlos Franco loaned money to appellants Simon and Patricia Gomez, by obtaining a Letter of Credit for them, for which he had not been paid. The trial court entered judg-

ment in favor of Franco for $17,441.84. Simon and Patricia Gomez appeal.

The appellants are the daughter and son-in-law of the appellee, Carlos Franco. Franco brought suit against Mr. and Mrs. Gomez, claiming that they owed him money on a Letter of Credit that he obtained on their behalf. Franco alleged that he obtained the Letter of Credit from McAllen State Bank in his name in order to assist the appellants in purchasing 15,120 pairs of shoes from Hong Kong. He testified at trial that he expected to be repaid by the appellants. At the time of the transaction, appellants were the owners of a retail variety store, and appellee Franco was in the electronics business. Appellants assert that the shoes were a gift from their father and father-in-law or, alternatively, it was a sale of goods. They contend that, if the transaction was a sale of goods, it is unenforceable since it was not in writing in compliance with TEX.BUS. & COM.CODE ANN. § 2.201 (Tex. UCC) (Vernon 1968).

A review of all of the testimony will be necessary in order to explain the conflicting contentions of the parties. Franco, the appellee, testified that Simon Gomez, his son-in-law, requested him to assist them in purchasing some shoes from Hong Kong. Franco said that Gomez told him that he could easily sell the shoes at his store within sixty days after they received them. Franco, the appellant, applied for a Letter of Credit which was to be paid ninety days after the shoes were received. All transactions were in Franco's name or his company name. Franco indicated that he agreed to help his daughter and son-in-law on the condition that, when the money became due, appellants would pay the bank. According to Franco, Gomez agreed. Appellee also testified that the parties agreed that he would be paid a commission for his effort in obtaining the necessary line of credit. Franco claims that he did not receive the promised commission when the shoes were sold, nor did he sue for it.

During Mr. Franco's testimony, various exhibits were introduced which showed the amount that he had been charged to complete the purchase of the shoes through a Letter of Credit. Franco testified that the appellants paid him $5,000.00 after the Letter of Credit was obtained. According to Franco, this money was repayment on an earlier loan he had made to his daughter and her husband and was not a payment on the loan in question. He testified that he never told appellants that he would forgive the balance due. Appellee testified that he paid the bank the amount owed on the Letter of Credit, but that he was never paid the amount of the letter of credit or interest which was due and owing.

Patricia Gomez, the daughter and one of the appellants herein, testified that her father told her that the shoes were in the United States, and that if she paid the import tax on them, she could have them. She claimed she never asked her father to order them. She also said that her father never told her how much they cost. She also testified that her father told her, after they had paid him $5,000.00, that they did not owe him any more money. She said that, when her father gave her the shoes, they began to sell them in the store. She testified that in August 1981, they obtained a Letter of Credit in their own name, thereby attempting to refute Franco's testimony that they needed his financial assistance.

The son-in-law testified that he never asked his father-in-law to buy the shoes for him. He claims no demand for payment was made until the inception of the lawsuit. He testified that he placed an order himself for the same type of shoes in October 1981, paid cash and obtained a better price. Mr. Gomez, too, claimed that the money was a gift to him and his wife.

The jury found, however (in answer to special issues); that the appellee and appellants had agreed upon a loan; that $17,441.84 was still due Mr. Franco; that the money was not a gift; and that the $5,000.00 Franco received from appellants was not a part payment on the loan.

Appellants assert three points of error on appeal. First, they claim the trial court erred in denying them certain special issues because they plead the defense of the Stat-

ute of Frauds under TEX.BUS. & COM. CODE ANN. § 2.201(a) (Tex. UCC) (Vernon 1968), but such issues were refused. They claim that appellee's testimony that he expected a commission on the sale of the shoes was evidence that the transaction was one for the sale of goods and not a loan. The three issues that the appellants requested were, as follows:

1. Do you find from a preponderance of the evidence that the dominant factor or "essence" of the transaction was that of a loan or of the sale of goods?

You are instructed that essence means the predominant factor, the thrust, the purpose of the transaction was for the rendition of a loan or for the sale of goods.

2. Do you find from a preponderance of the evidence that the plaintiff and defendants at the time of the transaction treated each other as merchants?

3. Do you find from a preponderance of the evidence that there existed a writing between the parties such that the terms of the transaction in question were described and which the defendant signed?

A writing need not be a single piece of paper but may be several documents which taken together will specify the terms of the agreement.

■ Under TEX.R.CIV.P. 277 and 279, all parties are entitled to have controlling issues that are raised by the written pleadings and evidence submitted to the jury. *Dennis Weaver Chevrolet, Inc. v. Chadwick*, 575 S.W.2d 619 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). A "controlling issue" is one which, if answered favorable to the theory in which it is presented, will support a basis for judgment for the proponent of the issue. *Stone v. Metro Restaurant Supply, Inc.*, 629 S.W.2d 254 (Tex.App.—Fort Worth 1982, writ ref'd n.r. e.); *Simmons Motor Co. v. Mosley*, 379 S.W.2d 711 (Tex.Civ.App.—Austin 1964, writ ref'd n.r.e.). Appellant correctly states that the issue before this Court is not the applicability of the U.C.C. to this case, but whether the appellants had the right to have their issues submitted to the jury.

■ The issues appellants requested sought to disprove appellee's theory of the case that the transaction was a loan. They plead that the transaction was a sale of goods. Appellants' requested issues were not controlling issues because by themselves they would not support a basis for judgment for the appellants. Their requested issues sought only to bring the case within the U.C.C. by inquiring whether the transaction was, in fact, a sale of goods. An affirmative finding on the issue as to whether the transaction was a sale vel non would not support a verdict in their favor without a negative finding on appellee's issue, which asked if the transaction was a loan. Appellants' requested issue, inquiring whether the transaction was in writing, was unnecessary. The evidence was uncontroverted that there was no written memorandum between the parties. The issue inquiring whether the transaction was a sale which appellants requested was, in fact, a rebuttal issue. Inferential rebuttal issues have been variously referred to as denial issues or argumentative denials rather than direct negatives. *Select Insurance Co. v. Boucher*, 561 S.W.2d 474 (Tex. 1978). They are evidentiary in the sense that a favorable response to such issues will not support a judgment; a negative answer to an opponent's issue which is submitted to support his ground of recovery is also necessary. G. Hodges, *Special Issue Submission in Texas* § 50 at p. 40 (1959). The basic characteristic of an inferential rebuttal issue is that it presents a contrary or inconsistent theory from the claim relied upon for recovery. *Select Insurance Co. v. Boucher*, 561 S.W.2d at 477. Inferential rebuttal issues should not be submitted to the jury. TEX.R.CIV.P. 277. We hold that the requested issues were properly refused by the trial court.

■ The appellants also argue that the issues should have been submitted because there is evidence that the transaction in question was a sale of goods. The trial court is required to submit an issue if there

is any evidence presented with respect to that issue. *Huckaby v. Henderson*, 635 S.W.2d 129 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Trevino v. Trevino*, 555 S.W.2d 792 (Tex.Civ.App.—Corpus Christi 1977, no writ). Here, appellant again urges that the contract in question was for the sale of goods because there was evidence that appellee was to receive a commission. TEX.BUS. & COM.CODE ANN. § 2.201(a) (Vernon 1968) provides:

(a) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Article 2 of the Texas Business and Commerce Code is applicable to the sale of "goods" which is defined as "all things ... which are movable at the time of identification to the contract for sale, *other than the money in which the price is to be paid*, investment securities ... and things in action." TEX.BUS. & COM.CODE ANN. § 2.105(a) (Tex.UCC) (Vernon 1968). (Emphasis added.) Article 2 is also expressly limited in scope to sales. *O.J. & C. Co. v. General Hospital Leasing, Inc.*, 578 S.W.2d 877 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ). The question of whether a particular transaction is a sale or some other type of transaction is determined by the intention of the parties. *Republic Building and Loan Ass'n v. Simpson*, 77 S.W.2d 1101 (Tex.Civ.App.—El Paso 1935, writ dism'd). The jury resolved this issue of fact adversely to appellant's contention.

The evidence introduced at trial showed that appellee had obtained a Letter of Credit in his name. The appellants went to Brownsville to arrange for the transportation of the shoes. The merchandise was returned to appellants' warehouse and eventually sold by appellants at their store. Nowhere in the record does it appear that a sale of goods was intended by either party. Carlos Franco's position throughout the trial was that he had loaned Patricia and Simon Gomez the money by obtaining a Letter of Credit in order to purchase the shoes for them. The controverted position of the appellants was that the shoes were intended to be a gift from Franco to them, rather than a loan. Although appellants plead the Statute of Frauds as a defense, appellant Patricia Gomez specifically denied that she had ordered shoes from her father. The testimony of appellee Franco that Gomez agreed to pay him a commission on the shoes does not place the transaction within Article 2. There was no evidence of an agreement between Franco and Gomez that Franco would sell and transfer title in the shoes to appellants. A commission for lending credit does not meet the definition of "goods" defined in TEX.BUS. & COM.CODE ANN. § 2.105(a) (Tex.UCC) (Vernon 1968).

We hold that the trial court properly refused to submit appellants' requested issues to the jury because they were not controlling issues within TEX.R.CIV.P. 277 and 279, and there was no evidence to support their submission. Appellants' first point of error is overruled.

In appellants' second and third points of error, they allege that the trial court erred in failing to grant their motion for Judgment Non Obstante Veredicto because there was no evidence to support the jury's verdict. Alternatively, the appellants assert the trial court erred in accepting the jury's verdict because there was insufficient evidence to support the verdict. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza*, 626 S.W.2d

120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960).

 This case is replete with conflicting testimony. The duty of the appellate court is to review the evidence as presented. It is not our province to substitute our judgment for that of the trier of facts, whether judge or jury. *Jim Walter Homes, Inc. v. Castillo*, 616 S.W.2d 630 (Tex.Civ.App.—Corpus Christi 1981), no writ; *Spoonmore v. Board of Polygraph & Examiners*, 608 S.W.2d 360 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.). Here, the bulk of the testimony heard by the jury was testimony of the parties themselves. The fact that the testimony is that of an interested party merely presents the additional issue of what degree of credibility his testimony should be afforded. *Williams v. Lemens*, 609 S.W.2d 596 (Tex.Civ.App.—Austin 1980, no writ).

 The appellee testified that $17,441.82 was the amount still due on the Letter of Credit with interest and banking charges. His testimony was supported by documentary evidence. There is also ample evidence to support the jury's finding in Special Issue Number Three that the money was not intended as a gift. The jury was at liberty to believe or disbelieve the parties and witnesses as they chose. This is the province of the jury system. We hold that the jury's findings were not so against the great weight and preponderance of the evidence as to be manifestly unjust.

Appellants' second and third points of error are overruled. The judgment of the trial court is affirmed.

BISSETT, J., not participating.