Charlotte A. PEMELTON, Appellant,

v.

Billy Gene PEMELTON, Appellee.

No. 13–90–133–CV.

Court of Appeals of Texas,
Corpus Christi.

May 9, 1991.

Lisa D. Powell, Atlas & Hall, Marlane A. Meyer, Susan Williams, Rebecca Pool, Atlas & Hall, McAllen, for appellant.

Lanette Smith Joubert, Corpus Christi, Barry Evan Jones, Weslaco, for appellee.

Before NYE, C.J., and SEERDEN and HINOJOSA, J.J.

## OPINION ON MOTION FOR REHEARING

NYE, Chief Justice.

We withdraw our original opinion and substitute this opinion on motion for rehearing. This is a suit for characterization of property and division of community assets pursuant to divorce. The trial court granted cross-plaintiff-appellee, Billy Gene Pemelton, a divorce based on cruel treatment by appellant, Charlotte Heggen Pemelton. The jury characterized the property in dispute and returned a take nothing verdict for Charlotte's tort claims against Billy Gene. The judgment divided the community estate and its debts, awarding, among other things, Charlotte with all reimbursement due the community for improvements made to her separate property and, to equalize division of the community estate, granted Billy Gene an equitable lien against Charlotte's separate property for his interest in the homestead. Charlotte asserts seventeen points of error. We affirm.

Charlotte and Billy Gene married June 11, 1960, in Mercedes. They then spent four or five years at Abilene Christian University, where Charlotte obtained a teaching certificate and Billy Gene trained for the 1964 Olympic pole-vaulting competition.

In 1965, the couple returned to Mercedes and began farming and ranching. Charlotte also taught school. The couple resided in a house located on a 32–acre tract (Tract A) owned by Charlotte's father and mother, Lloyd and Lilly Myrl Heggen. They rented this and other tracts from the Heggens for farming purposes. They also farmed other acreage which they either purchased or leased from other sources. In 1969, the Heggens deeded Tract A to Charlotte, intending the conveyance as a gift. On this property, Charlotte and Billy Gene created Pemelton Farm and Ranch, a horse breeding farm, by levelling and fencing the land, remodelling the house, building several stables, an office, grain storage bins and miscellaneous storage barns.

In 1976, the Heggens allegedly deeded to Charlotte an additional 127 acres (Tracts B and C), as her separate property. Charlotte executed a promissory note for the land, promising to pay in ten annual installments. Thereafter, the Heggens forgave the annual payment obligation as a Christmas gift. Neither Charlotte nor Billy Gene paid any money for Tracts B and C. This land was contiguous to Tract A and was used for the horse farm. Anticipating legalization of pari-mutuel wagering, the parties established a modest horse-racing facility on Tracts B and C.

During the marriage, Charlotte and Billy Gene also rented and purchased other farmland and owned and operated a western wear store, a cotton gin, a produce packing shed and a land-levelling business. In the mid–1980's, the Mexican peso's devaluation created a severe economic situation for businesses in the Rio Grande Valley. During that time the parties sold or lost through bankruptcy all but the horse farm, which subsequently entered bankruptcy proceedings in 1987.

Charlotte filed for divorce in January, 1988, alleging that the marriage was insupportable due to discord and conflict of personality. She also pleaded that: (a) Billy Gene intentionally and knowingly or recklessly caused her bodily injury by hitting her with his fists and beating her head on the floor of the office trailer; (b) Pemelton Farm and Ranch had to remain in operation to meet its Bankruptcy court debt repayment schedule and that Billy Gene willfully, intentionally and maliciously interfered with Charlotte's negotiations furthering the farm's business and in doing so breached a fiduciary relationship that existed between the couple; (c) Billy Gene squandered community assets over the course of the marriage and asked the court for an accounting and reimbursement of her share of the community which was wasted in this breach of fiduciary responsibility; (d) since their separation, Billy Gene slandered, libelled and defamed Charlotte damaging her reputation and character in the business and social community; and (e) she sought a permanent injunction against Bil-

ly Gene prohibiting him from communicating with her and destroying her property. Billy Gene cross-claimed, alleging that: (a) the marriage was insupportable, that Charlotte had committed adultery and treated him cruelly during their marriage; (b) that both Tract A and Tracts B and C, which Charlotte claimed as her separate property, were actually the separate property of both parties or was community property, or was held in constructive trust due to Lloyd Heggen's oral conveyances made in 1966 and 1974, respectively; (c) that the community should be reimbursed for the time, toil and effort invested and expended in developing and improving Charlotte's separate property; (d) that Charlotte intentionally, willfully maliciously and/or fraudulently breached her fiduciary responsibility to properly manage and operate the family business; (e) that Charlotte had slandered, libelled and defamed him, damaging his reputation and character in the business and social community; and (f) that Charlotte's violent and ungovernable temper caused him physical harm and mental anguish.

The jury found that Tracts B and C were community property and that Charlotte breached her fiduciary duty to Billy Gene by representing that he shared ownership of Tracts B and C. It also found that Billy Gene intentionally and willfully committed acts calculated to damage and which did damage Charlotte's business and that Billy Gene damaged Charlotte when he breached his fiduciary duty to her after their divorce was filed; however, in both instances, the jury found that "–0–" money would fairly compensate her for her damages.

The judgment granted the divorce based upon Charlotte's cruel treatment of Billy Gene and affirmed that Tract A was Charlotte's separate property. These findings are not contested on appeal. The judgment awarded Tracts B and C and a contiguous 17–acre undisputed community property tract to Billy Gene and ordered Charlotte's separate estate to pay Billy Gene $150,-000.00 for his interest in the homestead. To enforce this judgment, the trial court granted him an equitable lien on Tract A.

Charlotte's tenth point of error asserts that the trial court erred in allowing Billy Gene to present witnesses not timely designated in response to her request for discovery. She indicates that under Tex.R. Civ.P. 166b(6), a party who timely responds to a timely-filed discovery request must supplement his response no later than thirty days before the trial commences, unless the court finds good cause for permitting or requiring later supplementation.

■ Failure to respond to or supplement discovery requests results in the automatic loss of the opportunity to offer the witnesses' testimony. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 297–98 (Tex.1986); *Gonzalez v. Stevenson*, 791 S.W.2d 250, 252 (Tex.App.—Corpus Christi 1990, no writ); Tex.R.Civ.P. 215(5). However, if the proponent offering the evidence shows in the record that good cause exists for such failure, the trial court may admit the testimony. *Gonzalez*, 791 S.W.2d at 252; *Yeldell v. Holiday Hills Retirement & Nursing Center, Inc.*, 701 S.W.2d 243, 246 (Tex. 1985); *K–Mart Corp. v. Grebe*, 787 S.W.2d 122, 126 (Tex.App.—Corpus Christi 1990, writ denied); Tex.R.Civ.P. 215(5). Determination of good cause is within the sound discretion of the trial court and can only be set aside if the court acted without reference to any guiding rules and principles. *Morrow*, 714 S.W.2d at 298; *K–Mart*, 787 S.W.2d at 126; *Ramos v. Champlin Petroleum Co.*, 750 S.W.2d 873, 876 (Tex.App.— Corpus Christi 1988, writ denied).

■ In the present case, Billy Gene requested and received court permission to supplement discovery, allowing him to designate all of his witnesses twenty-five days before trial. Both parties refer to a hearing held on June 5, 1989, in which the trial court overruled Charlotte's objection to the late supplementation. Our examination of the statement of facts reveals no record of that hearing. The burden is on Charlotte to see that a sufficient record is presented to us to show error requiring reversal. Tex.R.App.P. 50(d). We therefore presume that anything omitted from the record on appeal supports the trial court's judgment. *Producer's Constr. Co. v. Muegge*, 669

S.W.2d 717, 718 (Tex.1984); *Haynes v. McIntosh*, 776 S.W.2d 784, 785–86 (Tex. App.—Corpus Christi 1989, writ denied); *De Leon v. Dr. Pepper Bottling Co.*, 694 S.W.2d 381, 382 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

More importantly, Charlotte failed to object when Billy Gene's witnesses testified. By failing to make a timely objection, motion or request to the trial court at the time an undisclosed witness takes the stand, a party waives any complaint under Rule 215(5) regarding the admission of that witness' testimony. *Clark v. Trailways, Inc.*, 774 S.W.2d 644, 647 (Tex.1989); Tex.R. App.P. 52(a). Point ten is overruled.

Charlotte asserts by her twelfth and thirteenth points of error that the evidence is legally and factually insufficient to support the jury's findings in Jury Question numbers 1 and 2. The jury found in Question 1 that Tracts B and C as well as the master bedroom and living room furniture were not Charlotte's separate property. In Question 2, the jury found that the conveyance of Tracts B and C by deed dated September 1, 1976, which the Heggens made to Charlotte, was not intended as a gift. Specifically, Charlotte argues that the evidence conclusively established that the 1976 deed conveyed the property to her separate estate and was a gift from her parents. The jury's characterization of the furniture is not an issue in this appeal.

In considering a "no evidence", "insufficient evidence", or an "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor, Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1950); *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Fin. Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960).

Generally, property either spouse possesses during or on dissolution of marriage is presumed to be community property, and it makes no difference whether the conveyance is in form to the husband, to the wife, or to both. Tex.Fam.Code Ann. § 5.02 (Vernon Supp.1991). Thus, initially, the land conveyed to Charlotte from her parents is presumed community. *See Tarver v. Tarver*, 394 S.W.2d 780 (Tex.1965). Property acquires its characterization as "separate" or "community" at the inception of title, namely, the moment when the owner first has a right to claim title because title is finally vested. *Henry S. Miller Co. v. Evans*, 452 S.W.2d 426, 430 (Tex. 1970); *Strong v. Garrett*, 148 Tex. 265, 224 S.W.2d 471, 474–76 (1949). Debts contracted during marriage are presumed to be the credit of the community and thus are joint community obligations, unless it is shown the creditor agreed to look solely to the separate estate of the contracting spouse for satisfaction. *Cockerham v. Cockerham*, 527 S.W.2d 162, 171 (Tex.1975).

Proof that the property was acquired by gift during the marriage may rebut the community presumption. Tex. Fam.Code Ann. § 5.01(a) (Vernon 1975). A presumption of separate property arises when (1) one spouse is grantor and the other spouse is grantee, or (2) one spouse furnishes separate property consideration and title is taken in the name of the other spouse, or (3) the instrument of conveyance contains a "significant recital" that states that the consideration is paid from the separate funds of a spouse or that the property is conveyed to a spouse as his or her separate property. Smith, *Characterization and Tracing*, State Bar of Texas Advanced Family Law Course (1989). Furthermore, a grantor may make a gift of encumbered property and a conveyance may be a gift even if the grantee assumes an obligation to extinguish the encumbrance. *Kiel v. Brinkman*, 668 S.W.2d 926, 929 (Tex.App.—Houston [14th Dist.] 1984, no writ); *see also Taylor v. Sanford*, 108 Tex. 340, 193 S.W. 661, 662 (1917); *Van v. Webb*, 237 S.W.2d 827, 832 (Tex.Civ. App.—Amarillo 1951, writ ref'd n.r.e.).

Specifically, Charlotte asserts that conveyances from parent to child are presumed to be gifts and that evidence over-

coming this presumption must be certain, definite, reliable and convincing. *See Equitable Trust v. Roland,* 721 S.W.2d 530, 533 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Hall v. Barrett,* 126 S.W.2d 1045, 1048 (Tex.Civ.App.—Fort Worth 1939, no writ). She also asserts that transfers set up as installment sales do not affect the gift presumption. *See Neff v. Ulmer,* 404 S.W.2d 644, 647 (Tex.Civ.App.—Amarillo 1966, writ ref'd n.r.e.) (Parents convey land to their child and take $5,000.00 note as consideration; gift presumption prevails because deed recited that the property was child's separate property and note was to be paid from child's separate estate.)

■ A gift is a transfer of property made voluntarily and gratuitously, without consideration. *Hilley v. Hilley,* 161 Tex. 569, 342 S.W.2d 565 (1961); *Ellebracht v. Ellebracht,* 735 S.W.2d 658, 658 (Tex.App.—Austin 1987, no writ). The burden of proving a gift is on the person claiming the gift was made. *Woodworth v. Cortez,* 660 S.W.2d 561, 564 (Tex.App.—1983, writ ref'd n.r.e.); *Diaz v. Cantu,* 586 S.W.2d 576, 580 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Although a conveyance of title from parent to child is presumed a gift, such presumption is rebuttable by evidence showing the facts and circumstances surrounding the deed's execution in addition to the deed's recitations. *See Haile v. Holtzclaw,* 414 S.W.2d 916, 927 (Tex.1967); *Woodworth,* 660 S.W.2d at 564.

■ Lack of consideration is an essential characteristic of a gift. *Woodworth,* 660 S.W.2d at 564; *Kunkel v. Kunkel,* 515 S.W.2d 941 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.). An exchange of consideration precludes a gift. *Williams v. McKnight,* 402 S.W.2d 505, 508 (Tex.1966); *Ellebracht,* 735 S.W.2d at 659. "Gift" and "onerous consideration" are exact antitheses. *John Hancock Mut. Life Ins. Co. v. Bennett,* 133 Tex. 450, 128 S.W.2d 791, 797 (Comm'n App.1939, opinion adopted); *Kearse v. Kearse,* 276 S.W. 690, 692–93 (Tex.Comm'n App.1925, judgm't adopted). A recital of onerous consideration in a deed "negatives the idea of a gift." *Ellebracht,* 735 S.W.2d at 659; *Kitchens v. Kitchens,* 372 S.W.2d 249, 255 (Tex.Civ.App.—Waco 1963, writ dism'd).

■ The appellate court reviews the evidence as presented and may not substitute its judgment for that of the trier of facts. *Roland,* 721 S.W.2d at 533; *Gomez v. Franco,* 677 S.W.2d 231, 236 (Tex.App.—Corpus Christi 1984, no writ). The fact that testimony is that of an interested party merely presents the additional issue of credibility. *Gomez,* 677 S.W.2d at 236. The jury determines the credibility of the witnesses and weighs the evidence. *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547, 549 (1962); *Tenngasco Gas Gathering Co. v. Fischer,* 624 S.W.2d 301, 305 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.).

■ A review of the facts reveals the following. The deed states that the transfer [of Tracts B and C] is from Lloyd and Lilly Myrl Heggen to Charlotte as her separate property. Billy Gene was not a party to the deed conveyance.[1] Lloyd Heggen manifested an intent to give the tracts in question to Billy Gene and Charlotte.[2] Concurrently and as consideration for the

---

1. Deed recitations to the wife as her separate property were rebuttable by parol evidence when the husband did not participate in the conveyance. *See Hodge v. Ellis,* 277 S.W.2d 900, 904 (Tex.1955).

2. Billy Gene testified that six to eight years before the 1976 transfer, Lloyd told him, "I'm going to give this land [Tracts B and C] to you and Charlotte and I hope you-all can make a living and everything." In 1976, Billy Gene saw Lloyd Heggen and Charlotte go to an attorney's office. Billy Gene was not asked to accompany them. Regarding their activities that day, Billy Gene stated:

And he [Heggen] said that he needed to work up his estates for tax planning because he didn't want to pay taxes on all of this and that he'd give us this land and everything, and so I thought that's fine with me. You know, he had helped us. And so he drew up this contract and whatever, and I did not know all the details of it. He's a very secretive man.

Billy Gene did not learn that Tracts B and C were allegedly deeded to Charlotte as her separate property until early 1987 when the couple filed the Pemelton Farm and Ranch bankruptcy suit.

deed's execution, Charlotte executed a promissory note for ten annual payments. Neither the note nor the deed stipulate that any payments made were to come only from Charlotte's separate estate. Further, the record shows that at the time of the transfer, Charlotte did not have sufficient separate funds to purchase the property. The payments totalled the approximate appraised value of the property. Up to the time of trial, the Heggens forgave, as a Christmas present, each annual payment as it came due, thus, neither Charlotte nor Billy Gene paid any monies in furtherance of the contractual obligation.

This evidence supports the jury's finding that Tracts B and C became community property at the time Charlotte contractually obligated the marital estate for their purchase. Although Charlotte asserts that her parents intended to transfer the property into her separate estate, to "gift back" the annual payments and ultimately forgive the entire note, the Heggen's forgiveness of the annual payments was entirely voluntary and could have been discontinued at any time, leaving Charlotte and Billy Gene obligated for the remaining amount. *See Smith v. Smith,* 620 S.W.2d 619, 623 (Tex.Civ.App.—Dallas 1981, no writ). The jury did not err when it found that Tracts B and C were not Charlotte's separate property. Points twelve and thirteen are overruled.

■ Charlotte asserts by her eleventh point of error that the trial court erred by impressing an equitable lien on her separate property homestead. The judgment awarded Charlotte "any and all reimbursement due the community estate from Charlotte's separate estate for improvements to Charlotte's separate real property" after the jury found that community funds, time, toil and talent enhanced the value of Charlotte's separate real property by $301,-500.00. The judgment also ordered that Billy Gene receive $150,000.00 from Charlotte for purposes of a just and right division of the community estate and stated:

This judgment is part of the **division of community property** between the parties and is given as **Respondent's inter-** est in the homestead of the parties and shall not constitute or be interpreted to be any form of spousal support, alimony, or child support. [Emphasis added.]

Charlotte asserts that it is unconstitutional to impress the homestead with an equitable lien.

Although Tract A belonged to Charlotte, the property was also impressed with a homestead right. The Texas Constitution gives each spouse in a marriage a separate and undivided possessory interest in the homestead, which is only lost by death or abandonment and which may not be compromised either by the other spouse or by his or her heirs. Tex.Const. art. 16, §§ 50, 51. Homestead rights vest independently in each spouse regardless of whether one spouse, or both, actually owns the fee interest in the homestead. *United States v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 2138, 76 L.Ed.2d 236 (1983). Furthermore, the homestead character of property is not destroyed even by divorce, if one of the parties to the divorce continues to maintain the property as a proper homestead. *Rodgers,* 103 S.Ct. at 2138, n. 10; *see Renaldo v. Bank of San Antonio,* 630 S.W.2d 638, 639 (Tex.1982); *Wierzchula v. Wierzchula,* 623 S.W.2d 730, 732 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). The *Wierzchula* court held that in a divorce action, a lien may be placed upon a spouse's real property homestead to secure payment of the amount awarded to the other spouse for that spouse's homestead interest. *Wierzchula,* 623 S.W.2d at 732; *see LeBlanc v. LeBlanc,* 761 S.W.2d 450, 452–53 (Tex. App.—Corpus Christi 1988), *writ denied per curiam,* 778 S.W.2d 865 (Tex.1989); *Brunell v. Brunell,* 494 S.W.2d 621, 622–23 (Tex.Civ.App.—Dallas 1973, no writ); *Hedtke v. Hedtke,* 112 Tex. 404, 248 S.W. 21, 22–23 (1923).

The trial court may not divest a spouse of separate property, whether real or personal. *Cameron v. Cameron,* 641 S.W.2d 210, 220 (Tex.1982). The court may, however, partition community property, award it to one or the other spouse, or require one spouse to compensate the other, as part of the disposition of marital property attend-

ant to the divorce proceedings. *See Hedtke*, 248 S.W. at 21–23; *Brunell*, 494 S.W.2d at 622–23. In the present case, there was no actual divestiture of Charlotte's separate property as the court awarded Billy Gene his community interest in the homestead. *See LeBlanc*, 761 S.W.2d at 452–53.

 In divorce actions, the trial court is vested with the authority to fix an equitable lien on separate estates for the discharge of payments to the former spouse by the owner of the property. *Buchan v. Buchan*, 592 S.W.2d 367, 371 (Tex. Civ.App.—Tyler 1979, writ dism'd); *Bell v. Bell*, 540 S.W.2d 432, 441 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ). This extends to equitable liens on a separate property family homesteads. *See Kamel v. Kamel*, 760 S.W.2d 677, 680 (Tex.App.—Tyler 1988, writ denied) (Court has authority to place equitable lien on one spouse's homestead if lien secures amount awarded other spouse for his or her interest in the homestead as well as for reimbursing the community for enhancing a spouse's separate real property.) Because the remedy is equitable in nature, it does not divest a party of his title to the separate real property; however, the party may voluntarily lose title by foreclosure should it choose not to comply with the court's order to pay. *Buchan*, 592 S.W.2d at 371; *Smith v. Smith*, 187 S.W.2d 116, 121 (Tex.Civ.App.—Fort Worth 1945, no writ).

The judgment compensates Billy Gene for the loss of his homestead interest in the division of the community while awarding Charlotte all reimbursement due the community for improvements made to her separate property. These provisions do not conflict. Granting Billy Gene a judgment representing his interest in the homestead was within the trial court's discretion in effecting a just and right division of the marital estate. Additionally, the court did not err when it granted him an equitable lien to secure his property interest in the homestead. *Rodgers*, 103 S.Ct. at 2138–39; *Brunell*, 494 S.W.2d at 622–23; *see Ex parte Scott*, 133 Tex. 1, 123 S.W.2d 306, 313 (1939); *Day v. Day*, 610 S.W.2d 195, 198–99 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.); *Mea v. Mea*, 464 S.W.2d 201, 206 (Tex.Civ.App.—Tyler 1971, no writ). Point eleven is overruled.

Point fourteen asserts that the trial court's division of the community property was not just and right and, thus, in violation of Tex.Fam.Code Ann. § 3.63 (Vernon Supp.1991). Charlotte also asserts that the court awarded her a portion of Billy Gene's separate property debt and that this Court should clarify which debts are Billy Gene's separate property. Specifically, Charlotte asserts that she should not be liable for one-half of the debt Billy Gene's business operations owe the IRS. Point seventeen asserts that the trial court erred in dividing the parties' debts because it lacked jurisdiction to enter judgment beyond the scope of the bankruptcy court order. This order authorized the divorce court to decide "only matters related to the characterization, possession and division of the marital estate of the debtors...." Charlotte argues that the trial court's judgment improperly reapportioned the parties' separate debts when dividing the community estate.

 Because the trial court has wide latitude in dividing marital property upon divorce, the trial court's judgment will not be disturbed absent a clear showing of abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex.1981); *McCaskill v. McCaskill*, 761 S.W.2d 470, 473 (Tex.App.—Corpus Christi 1988, writ denied); *Coggin v. Coggin*, 738 S.W.2d 375, 376 (Tex.App.—Corpus Christi 1987, no writ). The mere fact that the property division is not equal does not constitute abuse of discretion; however, there must be a reasonable basis for that property division, especially when it is unequal. *Coggin*, 738 S.W.2d at 736; *Zamora v. Zamora*, 611 S.W.2d 660, 662 (Tex.Civ.App.—Corpus Christi 1980, no writ). When dividing the community estate, the trial court may consider such factors as 1) relative earning capacities and business experience of the parties, 2) educational background of the parties, 3) size of separate estates, 4) the age, health and physical condition of the parties, 5) fault in the dissolution of the

marriage, 6) the benefits the innocent spouse would have received had the marriage continued and 7) probable need for future support. *Zamora*, 611 S.W.2d at 662.

██ Billy Gene's counsel prepared a comparison chart summarizing the disposition of the community property.[3] This chart concluded that the community division was almost equal. Our examination of the judgment indicates that this list is incomplete, because it fails to account for the community value of the horses awarded, the goodwill value of the name "Pemelton Farm and Ranch/Rio Rico Farms," and other items.

Nevertheless, examining the evidence in the light most favorable to the judgment, we are not convinced that the division of the estate was as grossly disproportionate as Charlotte asserts. Prior to their separation, the parties were involved in the development of Pemelton Farm and Ranch. Charlotte's responsibilities included breeding the mares to the horses at stud on the ranch, caring for the horses' welfare and keeping track of the ranch's financial endeavors, breeding records, and advertisements. Billy Gene concerned himself with buying and selling horses, acting as the ranch representative, and developing a horse-racing track. The property division apportions that property which allows Charlotte to further her particular interest in horse breeding and care and Billy Gene his horse trading and racing interests.

██ Additionally, Charlotte's assertions regarding the characterization and award of debt fail for two reasons. First, to prove that the debt was Billy Gene's separate property, Charlotte bore the burden of overcoming the community debt presumption. The record contains sufficient evidence supporting the trial court's characterization of the debts. Second, Billy Gene started and operated most of his various business concerns during the marriage. Thus, the businesses were presumed to be community property. That Charlotte could not sign on the accounts of some of these ventures is irrelevant.

██ Because the businesses were created during the marriage and benefitted the community, their income and debts were joint management community property. A joint liability, being a personal liabili-

3.

| | Property to Husband | Property to Wife |
|---|---|---|
| Reimbursement to community for community time, toil and effort to improve separate estate of Charlotte | | 50,000. |
| Enhanced value of separate est. of *Charlotte resulting from community funds* | | 251,500. |
| 116 ac. $ $1,050. per acre | 121,800. | |
| 16.99 ac. $ $2,000. per acre | 33,980. | |
| Household goods and equipment | | 2,125. |
| Household goods and equipment | 17,979. | |
| Business including accounts receivable (value shown as acct. rec. only) | | 38,000. |
| Escrow account | 5,000. | 5,000. |
| Judgment for hay | 15,000. | |
| Equalizing judgment | 150,000. | |
| Total property to each | $343,759. | $346,625. |

ty of each spouse individually, can be collected from both spouses' non-exempt property, be it separate or community. Orsinger, Richard R., *Marital Liabilities: Which Estate is Liable for What?*, Corpus Christi Bar Ass'n Family Law Seminar, Mar. 22, 1991. The trial court's division of debt between the parties, particularly, one-half of the federal tax liability to each, is supported by the evidence. *See* Tex.Fam.Code Ann. § 4.031 (Vernon Supp.1991). Points fourteen and seventeen are overruled.

Charlotte's first nine points of error challenge the jury's answers to Jury Question numbers 14, 15, 23, 24, 25, 26, 27, 35, 37 and 38. Points one through three relate to equitable reimbursement claims pursuant to the divorce while points four through nine relate to Charlotte's additional claims against Billy Gene.

■ Charlotte's first point of error asserts that the jury's findings in Jury Question numbers 14 and 15 are in irreconcilable conflict and therefore, the answer to number 15 should be set aside. Charlotte's second and third points of error assert that the evidence is both legally and factually insufficient to support the jury's answer to Jury Question number 15. In Jury Question number 14, the jury found that the community estate derived a benefit from Charlotte's Tract A. However, in Jury Question number 15, the jury found that "–0–" was the value which the community derived from Charlotte's separate estate.

The equitable reimbursement claim between marital estates should be determined by equitable principles. *Anderson v. Gilliland*, 684 S.W.2d 673, 675 (Tex.1985). Under equitable principles, a benefitted estate should not be required to pay more in reimbursement than the amount in which it was benefitted by the other estate and, conversely, a benefitted estate should return the benefit received. *Gilliland*, 684 S.W.2d at 675. However, an equitable claim for reimbursement is not merely a balancing of the ledgers between the marital estates. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex.1988). The trial court must have great latitude in applying equitable principals to value reimbursement claims.

The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as that discretion subsequently exercised by the trial court in making a "just and right" division of the community property. *Penick*, 783 S.W.2d at 198; *see also* Tex.Fam.Code Ann. § 3.63 (Vernon Supp. 1991).

In the present case, Tract A contained the bulk of the improvements made upon Pemelton Farm and Ranch, where the parties resided in and extensively remodelled the home and created a horse breeding and care facility. During twenty-eight years of marriage, Charlotte and Billy Gene put their time, toil and effort into establishing the farm. The jury found that the community estate enhanced the value of Charlotte's separate estate in the amount of $251,500.00. It also found that the community estate benefitted from Charlotte's separate estate but did not place a monetary value on the benefit. Among other considerations, Tract A received permanent benefit from the improvements. We do not find that the jury abused its discretion by balancing, as it did, the benefits each estate enjoyed. Points one, two and three are overruled.

■ Point of error number four asserts that the answers to Jury Question numbers 23, 24, 25 and 26 irreconcilably conflict with number 27 and therefore, number 27 should be set aside. Points five and six assert that the evidence is both legally and factually insufficient to support the jury's answer to number 27. Point number seven asserts that the answers to Jury Question numbers 35 and 37 are in irreconcilable conflict with number 38 and thus, the answer to number 38 should be set aside. Points eight and nine challenge the legal and factual sufficiency of the evidence to support the jury answer to number 38.

In Jury Question numbers 23, 24, 25 and 26 the jury found that Billy Gene intentionally and willfully committed acts calculated to cause damage to Charlotte's business, that his acts were done with the unlawful purpose of causing her damage and loss and were without right or justifiable excuse, that his acts promoted no personal

**652**

useful purpose, and that his acts resulted in Charlotte's business suffering actual business damages and loss. However, in Jury Question number 27, the jury found that a "–0–" sum of money would fairly and reasonably compensate Charlotte for her actual business damages and losses due to Billy Gene's acts. The judgment subsequently awarded her $10.00 for the damages suffered by Billy Gene's acts. The jury found in Jury Question numbers 35 and 37 that Billy Gene breached his fiduciary duty to Charlotte after the date the divorce petition was filed and that the fiduciary breach caused Charlotte damage. However, in number 38 the jury found that a "–0–" sum of money would fairly and reasonably compensate Charlotte for the damage she suffered due to Billy Gene's breach.

In determining whether a fatal conflict exists between jury findings, the test is whether one conflicting finding with the remainder of the verdict requires judgment for the plaintiff while the other conflicting finding with the remainder of the verdict requires judgment for the defendant. *Little Rock Furniture Mfg. Co. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985, 991 (1949); *Marshbank v. Austin Bridge Co.,* 669 S.W.2d 129, 134 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *Junkermann v. Carruth,* 620 S.W.2d 165, 169 (Tex.Civ. App.—Corpus Christi 1981, no writ).

In the present case, the jury answered that "–0–" was the amount of money that would adequately compensate Charlotte in her tort claims against Billy Gene. Disregarding this answer in questions 27 and 38 for each tort claim requires a verdict for Charlotte. However, disregarding the findings that Billy Gene damaged her business and breached a fiduciary duty does not require a verdict for Billy Gene. The jury's answers in questions 27 and 38 mean that the amount of cash which would fairly and reasonably compensate Charlotte for her injuries for both claims was "–0–."

Furthermore, the mental process by which a jury determines the amount of damages is ordinarily not cognizable by an appellate court. *Adams v.*

*Petrade Int'l, Inc.,* 754 S.W.2d 696, 710 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *see also Sumners Rd. Boring, Inc. v. Thompson,* 393 S.W.2d 690, 697 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.). The amount of damages is largely within the jury's discretion. *Crowe v. Gulf Packing Co.,* 716 S.W.2d 623, 625 (Tex.App.—Corpus Christi 1986, no writ); *Del Carmen Alarcon v. Circe,* 704 S.W.2d 520, 521 (Tex.App.—Corpus Christi 1986, no writ). The decisions in *Crowe* and *Alarcon* are distinguishable from the instant case. These two cases involved personal injury claims where the jury found liability and awarded money damages for some but not all of the personal injury damages elements, such as loss of earnings and future medical expenses. The present case involves two torts against property claims where the jury received only one element of damages for each cause of action. Our review of the entire record indicates that the jury's award of "–0–" damages was proper. Points four through nine are overruled.

Discussion of the remaining points of error is unnecessary. The trial court's judgment is AFFIRMED. Charlotte's motions for rehearing and to amend the record are DENIED.